HOMETOWN CO–OPERATIVE APART-
MENTS, an Illinois not-for-profit
corporation, Plaintiff,

v.

CITY OF HOMETOWN, a municipal
corporation, Defendant.

No. 80 C 5988.

United States District Court,
N. D. Illinois, E. D.

May 26, 1981.

J. Craig Busey, Donald O. Walsh, Barbara
J. Smith, McDermott, Will & Emery, Chica-
go, Ill., for plaintiff.

Vincent Cainkar, Chicago, Ill., for defend-
ant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Hometown Co-operative Apart-
ments, an Illinois not-for-profit corporation,
brought this action pursuant to the Civil
Rights Act of 1871, as amended, 42 U.S.C.
§ 1983, challenging the constitutionality of
an amendment to the municipal building
code of defendant, the City of Hometown,
Illinois, making it unlawful for a new own-
er or lessee of residential property to occu-
py the premises unless a certificate of hous-
ing inspection without any deficiencies has
been issued for the property within the
prior three months.[1] The ordinance pro-
vides that the building department is to
issue a certificate of inspection within four-
teen days after gaining access to the prop-
erty whether by consent or by warrant.[2]
Each day of occupancy without a valid cer-
tificate of inspection constitutes a separate
offense punishable by a fine of not less than
ten nor more than five hundred dollars.[3]

---

1. Hometown Ordinance No. 16–1977, as
amended September 9, 1980, § 21.127(a).

2. Hometown Ordinance No. 16–1977, as
amended September 9, 1980, § 21.127(c).

3. Hometown Ordinance No. 16–1977, as
amended September 9, 1980, § 21.130.

Plaintiff seeks injunctive relief against the enforcement of the ordinance and a declaratory judgment that the ordinance authorizes unreasonable searches in violation of the fourth amendment as applied to the states through the fourteenth amendment due process clause.[4] This matter is presently before the Court on the parties' cross-motions for summary judgment pursuant to Fed.R.Civ.P. 56. The parties agree, and we so find, that there are no material facts in dispute and that the question before the Court is of a purely legal nature.

This is not the first time these parties have been before the Court with respect to the constitutionality of a Hometown ordinance that authorizes point of sale inspections of residential property. Last year, this Court held that the predecessor of Hometown's present ordinance was "unconstitutional under the fourth amendment insofar as it fail[ed] to provide for a warrant as a prerequisite for the point of sale inspection." *Hometown Cooperative Apartments v. City of Hometown*, 495 F.Supp. 55, 60 (N.D.Ill.1980).[5] Following our ruling, the City of Hometown amended its ordinance by specifically providing that:

> (e) [w]here no consent has been given to enter or inspect any property, no entry or inspection shall be made without the procurement of a warrant from the Circuit Court of Cook County. The Court may consider any of the following factors along with such other matters as it deems pertinent in its decision as to whether a warrant shall issue:
>
> 1. Eyewitness account of violation.
> 2. Citizen complaints.
> 3. Tenant complaints.
> 4. Plain view violations.
> 5. Violations apparent from City records.
> 6. Property deterioration.
> 7. Age of property.
> 8. Nature of alleged violation.
> 9. Similar properties in the area.
> 10. Documented violations of similar properties in the area.
> 11. Passage of time since last inspection.
> 12. Previous violations on the property. Cause for issuance of a warrant shall be deemed to exist in light of reasonable legislative and administrative standards which show that there is reason to believe that a condition of nonconformity exists with respect to a particular property in violation of a City ordinance.

Hometown Ordinance No. 16–1977, as amended September 9, 1980, § 21.127(e). The City also made other changes in the ordinance not relevant here. We must now decide whether the inclusion of a warrant procedure in the ordinance covering situations in which a property owner or tenant refuses to consent to an inspection remedies the earlier constitutional defect.

In *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court held "that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual." 387 U.S. at 534, 87 S.Ct. at 1733. While the Court recognized that the fourth amendment provides that "no Warrants shall issue, but upon probable cause," it concluded, after balancing the governmental and individual interests involved in area-wide code enforcement inspections, that probable cause to issue a warrant to inspect exists "if reasonable legislative or administrative standards for conducting an area inspection

---

4. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

5. At that time, the Court also held that "[t]he cooperative is the proper party to represent its own interests as well as the interests of the buyers or lessees of its residential units." *Hometown Cooperative Apartments v. City of Hometown*, 495 F.Supp. 55, 58 (N.D.Ill.1980).

are satisfied with respect to a particular dwelling." 387 U.S. at 538, 87 S.Ct. at 1736. The Court enumerated several factors that might constitute sufficient reason to conduct an inspection, including the passage of time, the nature of the building, or the condition of the area, but it expressly rejected the contention that probable cause must "depend upon specific knowledge of the condition of the particular dwelling." *Id.* Courts in other jurisdictions have similarly upheld the constitutionality of code enforcement inspections and ordinances similar to the one involved in the case at bar as long as a warrant is required when the owner or occupant of the property refuses to voluntarily consent to the inspection. *Currier v. City of Pasadena,* 48 Cal. App.3d 810, 121 Cal.Rptr. 913, *cert. denied,* 423 U.S. 1000, 96 S.Ct. 432, 46 L.Ed.2d 375 (1978); *Wilson v. City of Cincinnati,* 46 Ohio 2d 138, 346 N.E.2d 666 (1976).

▪ By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection. If the property owner or tenant refuses to consent to the inspection, the city must procure a warrant in order to gain access to the property. To this extent, the Hometown ordinance is now in accord with the fourth amendment proscription of unreasonable searches and seizures.

The plaintiff maintains, however, that the ordinance—even as amended—is unconstitutional because it still has the effect of coercing involuntary consent to a warrantless search at the risk of substantial penalty in situations in which the city either refuses to or cannot procure a warrant consistent with the reasonable cause to believe standard set forth in *Camara.* In such circumstances, plaintiff argues that the property owner or lessee is in the same position as if the warrant procedure were not incorporated in the ordinance. Since the ordinance flatly prohibits occupancy of a residence as a new owner or tenant without a valid certificate of inspection, plaintiff contends that, in a situation where the city does not or cannot procure a warrant, the property owner must either consent to a warrantless search or risk substantial fines just as before the ordinance was amended.

Plaintiff's argument assumes that there will be situations in which the City of Hometown either will refuse to seek a warrant, presumably in bad faith and contrary to the letter and spirit of the ordinance, or will be unable to procure one, and that in such circumstance the city will force a property owner or tenant to consent to a warrantless search on the threat of substantial penalty. This speculation and conjecture as to possible future events is inappropriate at this time, however, in light of the facial validity of the Hometown ordinance as discussed above.

▪ In order to present a justiciable case or controversy ripe for judicial decision, there must be "a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." *Babbitt v. United Farm Workers National Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1978). The Supreme Court itself has noted that "[t]he difference between an abstract question and a 'case or controversy' is one of degree, of course, and is not discernible by any precise test." *Id.,* 442 U.S. at 297, 99 S.Ct. at 2308. At the core of the justiciability issue, however, is the ripeness of a particular question for decision, and it is clear that a court should exercise discretion when "the tendered case involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Wright, Miller & Cooper, *Federal Practice and Procedure,* § 3532 at 238 (Cumm.Supp.1980).[6]

---

6. The Court may raise the ripeness issue sua sponte notwithstanding the parties' desire to have the question decided by the Court. As the Supreme Court noted in *Blanchette v. Connect-*

Speculation about the possibility of future unconstitutional acts of officials under a statute is insufficient to create a ripe case or controversy. In *Boyle v. Landry*, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), the Court refused to enjoin enforcement of a criminal statute that had never been used or asserted against the plaintiffs in the manner that they feared. The Court noted that the mere possibility of future bad faith prosecutions under the statute was insufficient to state a justiciable claim. Further, there was nothing to indicate, as in the case at bar, that the plaintiffs were in danger of suffering irreparable injury if the state was left free to prosecute under the statute in the normal manner. Similarly, in *Goodman v. Parwatikar*, 570 F.2d 801 (8th Cir. 1978), the plaintiff complained about the possibility of future arbitrary and uncontrolled official use of discretion under a state statute authorizing the discharge of voluntarily committed mental patients. The court held that it did not need to reach the question of the constitutionality of the statute since the patient in question had not been discharged under the statute and there were no plans to do so in the future. The court concluded, "[t]hus, we are not presented with a factual situation in which the validity of the statute is actually involved in an adversarial context." 570 F.2d at 805–06.

 In the same vein, the possibility that circumstances will arise in the future, as postulated by the plaintiff herein, in which residents of the City of Hometown will be forced to consent to inspections against their will because the city either refuses to seek a warrant or is unable to procure one under the relatively liberal standards set down in the ordinance consistent with *Camara*, does not state a case or controversy ripe for judicial determination.

Accordingly, for the reasons set forth in this opinion, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. It is so ordered.

---

*icut General Insurance Corp.*, 419 U.S. 102, 138, 95 S.Ct. 335, 356, 42 L.Ed.2d 320 (1974), "to the extent that questions of ripeness involve the exercise of judicial restraint from unnecessary decision of constitutional issues, the Court must determine whether to exercise that restraint and cannot be bound by the wishes of the parties. *See also Duke City Lumber Co. v. Butz*, 539 F.2d 220, 221 n.2 (D.C.Cir. 1976), *cert. denied*, 429 U.S. 1039, 97 S.Ct. 737, 50 L.Ed.2d 751 (1977).