ORDER
 

 MIHM, Chief Judge.
 

 This matter is before the Court on Defendant’s Motion to Dismiss [# 3]. For the reasons set forth below, the Motion to Dismiss is GRANTED on the merits as to the issue of whether the Ordinance in question is constitutional on its face and GRANTED WITHOUT PREJUDICE on the issue of whether the Ordinance is constitutional as applied because that issue is not ripe for adjudication at this time. The Motion to Dismiss is GRANTED as to Plaintiffs’ Fair Housing Act allegations, and Plaintiffs have 21 days to replead the deficient allegation.
 

 Factual Background
 

 In 1995, the City of Peoria (“City”) adopted the Rental Registration and Inspection Ordinances (“Rental Ordinances”), three ordinances relating to the registration and inspection of rental properties. The first, ordinance # 13,908, amended Chapter 5 of the Code of the City
 
 of
 
 Peoria (the “Code”) by adding Article XIII, §§ 5-520 through 5-530. (Exhibit A to Plaintiffs’ Complaint, hereinafter “Registration Ordinance”.) The second, ordinance # 13,913, amended Chapter 5 of the Code by adding a preamble, as well as extending Article XIII to include §§ 5-531 through 5-544. (Exhibit B to Plaintiffs’ Complaint, hereinafter “Inspection Ordinance”.) The third, ordinance # 13,957 amended Chapter 5 of the Code by adding additional language to § 5-531 of Article XIII. (Exhibit C to Plaintiffs’ Complaint.) Only the constitutionality of the Inspection Ordinance, §§ 5-531,
 
 et seq.,
 
 is at issue in this case. (Complaint at ¶ 91.)
 

 The Rental Ordinances require owners of rental properties to register their properties with the City and to have these properties inspected for compliance with the City’s housing, environmental, and building codes. (Rental Ordinances, §§ 5-520,
 
 et seq.)
 
 Specifically, § 5-521 of the Registration Ordinance requires every owner of an occupied or vacant dwelling to file a registration statement for each such property with the City. (Registration Ordinance, § 5-521.) Section 5-532(a) of the Inspection Ordinance provides that all dwellings constructed prior to 1961 shall be subject to inspection at least once every three years. (Inspection Ordinance, § 5-532(a).) Section 5-531 limits the interior inspections to the 15 specifically enumerated health and life-threatening violations.
 
 Id.
 
 at § 5-531. Only the constitutionality of the Inspection Ordinance, §§ 5-531,
 
 et seq.,
 
 is at issue here. (Complaint at ¶ 91.)
 

 Pursuant to § 5-534(a), a Certificate of Inspection issues to the owner of the property once the inspection is complete and the property is found to be in compliance. (Inspection Ordinance, § 5-534(a).) If the property is found to have one or more health or life-threatening violations or an exterior housing code or environmental violation, the City is to provide written notice to the owner citing these violations and setting a reinspection date by which time the owner must correct these violations.
 
 Id.
 
 at § 5-534(b). Section 5-532 requires the City to give written notice of the date of inspection of the dwelling to the authorized agent or owner of the property, as well as to the occupant.
 
 Id.
 
 at § 5-532(a). Section 5-532(a) also provides that this notice “shall advise the owner or authorized agent and occupant of the inspection, their right to refuse inspection of the dwelling unit, and the City’s right to seek issuance of an administrative search warrant in the event of any such refusal.”
 
 Id.
 
 Pursuant to § 5-539(a), it is unlawful for any
 
 *631
 
 person to occupy or lease any dwelling without a Certificate of Inspection.
 
 Id.
 
 at § 5-539. However, § 5-533(a) provides that proof of registration pursuant to § 5-521 of the Registration Ordinance shall constitute a temporary Certificate of Inspection which allows the owner to rent the property until the initial inspection has been performed pursuant to § 5-532.
 
 Id.
 
 at § 5-533(a). Finally, § 5-539(b) enumerates the penalties for noncompliance.
 
 Id.
 
 at § 5-539(b).
 

 Procedural Background
 

 Plaintiffs are 69 owners of rental dwellings which are subject to inspection under the Peoria Municipal Code, Chapter 5, Article XIII, §§ 5-531,
 
 et seq.,
 
 the Inspection Ordinance. (Complaint at ¶¶4-72.) Plaintiffs filed a civil rights action for declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 3604, and 28 U.S.C. §§ 2201, 2202, in an effort to enjoin enforcement of the Ordinance.
 
 Id.
 
 at ¶ 1.
 

 Plaintiffs allege that the Inspection Ordinance is unconstitutional on its face and as construed and applied because it coerces them to consent to warrantless administrative searches of their rental properties in violation of their Fourth Amendment right to be free from unreasonable searches and seizures.
 
 Id.
 
 Plaintiffs further allege that the Inspection Ordinance on its face and as construed and applied violates 42 U.S.C. § 3604(a) of the Fair Housing Act.
 
 Id.
 

 The City filed a Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Motion to Dismiss at 1.) The City asserts the following claims in support of its Motion: first, the Inspection Ordinance does not violate the Fourth Amendment restriction against unreasonable searches and seizures; second, there is no allegation in Plaintiffs’ Complaint that the Inspection Ordinance has been applied in any unconstitutional manner to any of the Plaintiffs, and, therefore, the matter is not ripe for decision by this Court; and, third, Plaintiffs’ Complaint is inadequate to put the Defendant on notice as to how the Inspection Ordinance violates the Fair Housing Act, 42 U.S.C. § 3604(a), or how any of the Plaintiffs has standing to bring an action under this section of the Fair Housing Act.
 
 Id.
 

 In their Response, Plaintiffs argue that the Inspection Ordinance unconstitutionally coerces them to consent to warrantless administrative searches of their rental premises in order to obtain the required Certificate of Inspection and, thus, to avoid payment of a penalty for failure to comply. (Plaintiffs’ Memorandum of Law in Opposition to Defendant’s Motion to Dismiss (“Memo, in Opp.”) at 25.) Plaintiffs argue that the Inspection Ordinance’s warrant procedure does not remedy this constitutional defect because it directs the City to advise landlords and tenants of their
 
 right
 
 to seek issuance of an administrative search warrant rather than
 
 requiring
 
 the City to procure the warrant.
 
 Id.
 

 Discussion
 

 In resolving a motion to dismiss, courts must consider all well-pled facts as true and must draw all inferences in favor of the non-moving party.
 
 Bontkowski v. First Nat. Bank of Cicero,
 
 998 F.2d 459, 461 (7th Cir.),
 
 cert. denied,
 
 510 U.S. 1012, 114 S.Ct. 602, 126 L.Ed.2d 567 (1993). In ruling on a motion to dismiss, courts consider whether relief is possible under any set of facts that could be established consistent with the allegations in the complaint.
 
 Conley v. Gibson,
 
 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957). Courts dismiss a claim only if it is beyond doubt that no set of facts would entitle the plaintiffs to relief.
 
 Venture Associates Corp. v. Zenith Data Systems Corp.,
 
 987 F.2d 429, 432 (7th Cir.1993).
 

 A. Warrantless Administrative Searches
 

 The leading case on the issue of warrant-less administrative searches is
 
 Camara v. Municipal Court of City and County of San Francisco,
 
 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967),
 
 overruled on other grounds, Califano v. Sanders,
 
 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).
 
 Camara
 
 involved a tenant who refused to consent to an inspection of his property and then sued to enjoin prosecution for violation of a housing code.
 
 Camara,
 
 387 U.S. at 525-28, 87 S.Ct. at 1729-30. The inspectors were acting pursuant to a San Francisco ordinance which
 
 *632
 
 allowed them to enter a building without a warrant and cheek for possible budding code violations.
 
 Id.
 
 at 525-27, 87 S.Ct. at 1729. The Supreme Court held that warrantless searches of residential property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.
 
 Id.
 
 at 528-34, 87 S.Ct. at 1731-33. The Court reasoned that administrative searches for housing code violations significantly intrude upon the interests protected by the Fourth Amendment and, therefore, administrative searches which are not authorized by a warrant violate the traditional safeguards provided by the Fourth Amendment and are unconstitutional.
 
 Id.
 
 at 532-34, 87 S.Ct. at 1733.
 

 The Court did acknowledge the strong governmental interest in inspecting for housing code violations and established the standard for obtaining administrative search warrants to inspect for such violations.
 
 Id.
 
 at 538-40, 87 S.Ct. at 1736. The Court concluded that “ ‘probable cause’ to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling.”
 
 Id.
 
 Some factors to be considered include “the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area----”
 
 Id.
 
 However, the Court went on to conclude that reasonableness is the ultimate standard.
 
 Id.
 
 As long as “a valid public interest justifies the intrusion contemplated, then there is probable cause to issue a suitably restricted search warrant.”
 
 Id.
 

 In the present case, the City argues that there is no constitutional infirmity with the Inspection Ordinance because (1) it provides a warrant procedure for situations in which the landlord or tenant refuses to consent to an inspection; (2) in such situations, probable cause to issue a warrant exists under the standard set forth in
 
 Camara;
 
 and (3) speculation about the possibility that the City will not or cannot obtain a warrant is not appropriate at the present time. (Defendant’s Memorandum of Law in Support of its Motion to Dismiss (“Memo, in Supp.”) at 5-6.) In their Response, Plaintiffs argue that (1) warrantless searches without consent are unconstitutional,
 
 Camara,
 
 387 U.S. at 528-30, 87 S.Ct. at 1731; (2) coercing an involuntary consent to a warrantless search through the imposition of a penalty is unconstitutional,
 
 Sokolov v. Village of Freeport,
 
 52 N.Y.2d 341, 438 N.Y.S.2d 257, 260, 420 N.E.2d 55, 58 (1981); and (3) the Inspection Ordinance’s warrant procedure is inadequate because it does not
 
 require
 
 the City to procure a warrant upon a refusal to permit an inspection. (Memo, in Opp. at 6-7.) Thus, the parties agree that both warrantless searches without consent and searches made with involuntary consent are unconstitutional. (Memo, in Supp. at 4; Memo, in Opp. at 6.) Therefore, on the merits, the central disputes are whether the search warrant provision in the Inspection Ordinance on its face unconstitutionally coerces Plaintiffs to consent to a warrantless search because there is no warrant
 
 requirement
 
 and whether the Inspection Ordinance, as written, provides the requisite constitutional safeguards.
 

 Turning to the Inspection Ordinance itself, § 5-532(a) provides that the City “shall” inspect those dwellings subject to registration under Article XIII “at least once every three years.” (Inspection Ordinance, § 5-532(a).) Prior to inspection, the City must give written notice of the date of inspection to the owner of the building or his authorized agent and to the occupant at least fifteen days prior to the date of the inspection.
 
 Id.
 
 The notice must advise these persons of their right to refuse inspection of the dwelling unit.
 
 Id.
 
 The City then reserves the
 
 right
 
 to seek an administrative search warrant in the event of any such refusal.
 
 Id.
 
 Section 5-539(a) makes it unlawful for any person to occupy or lease any dwelling which does not have a valid Certificate of Inspection.
 
 Id.
 
 at § 5-.539. Finally, § 5-533 provides that proof of registration of a rental property under § 5-521 of the Registration Ordinance shall constitute a temporary Certificate of Inspection which authorizes an owner to rent the dwelling until the initial inspection is performed.
 
 Id.
 
 at § 5-533.
 

 The City maintains that because the Inspection Ordinance provides for a warrant procedure and because it would follow the
 
 *633
 
 procedure outlined in
 
 Camara
 
 for seeking a warrant, the Inspection Ordinance is constitutionally sound. (Memo, in Supp. at 5.) Next, the City argues that the Inspection Ordinance does not coerce Plaintiffs into involuntarily consenting to a warrantless search because Plaintiffs are proceeding under the false assumption that they will be subject to penalties for noneompliance upon a refusal to permit inspection.
 
 Id.
 
 at 3. The City maintains that it has the
 
 right
 
 to seek a warrant
 
 and
 
 will automatically do so in the event it cannot obtain consent to inspect.
 
 Id.
 
 Finally, the City insists that it will not impose penalties for noneompliance without first obtaining a warrant to inspect the premises.
 
 Id.
 

 In spite of the City’s contentions, Plaintiffs maintain that the Inspection Ordinance is unconstitutional because it coerces involuntary consent through the imposition of a criminal penalty. (Memo in Opp. at 21-22.) Plaintiffs cite cases in which courts found similar inspection ordinances unconstitutional because they forced the property owners to choose between consenting to a warrantless inspection and facing criminal penalty.
 
 Id.
 
 at 7-15;
 
 Sokolov,
 
 438 N.Y.S.2d at 260-61, 420 N.E.2d at 58-59;
 
 Pashcow v. Town of Babylon,
 
 96 Misc.2d 1036, 410 N.Y.S.2d 192, 193-94 (1976);
 
 Wilson v. City of Cincinnati,
 
 46 Ohio St.2d 138, 346 N.E.2d 666, 670 (1976).
 

 Plaintiffs further argue that the lack of an express warrant
 
 requirement
 
 is the vital flaw which renders the ordinance unconstitutional. (Memo, in Opp. at 21-22.) In support of this proposition, Plaintiffs cite
 
 Currier v. City of Pasadena,
 
 48 Cal.App.3d 810, 121 Cal.Rptr. 913, 916,
 
 cert. denied,
 
 423 U.S. 1000, 96 S.Ct. 432, 46 L.Ed.2d 375 (1975), which involved an ordinance similar to Peoria’s.
 
 Id.
 
 at 22. The
 
 Currier
 
 Court held the ordinance to be unconstitutional because “[t]he ordinance must be judged by what could happen under it,” not by what the city represents would occur.
 
 Currier,
 
 121 Cal.Rptr. at 916. Thus, Plaintiffs maintain that because the City reserves the
 
 right
 
 to seek a warrant, the decision is discretionary and therefore unconstitutional. (Memo, in Opp. at 25.)
 

 This Court finds that the plain language of the Inspection Ordinance can be read as incorporating a warrant requirement into the inspection procedure, thereby successfully defeating a claim that it is unconstitutional on its face. As to the question of whether the Inspection Ordinance has been or will be unconstitutionally applied, that issue is not ripe for judicial decision.
 

 (1) The Inspection Ordinance on Its Face
 

 Despite Plaintiffs’ protestations to the contrary, the plain language of the Inspection Ordinance, when viewed as a whole, incorporates a warrant requirement into the inspection procedure. In
 
 Gomez v. United States,
 
 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989), the Supreme Court issued a reminder that, when interpreting statutory schemes, “[i]t is our settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question.” The Court quoted from its decision in
 
 Pilot Life Insurance Co. v. Dedeaux,
 
 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), that “[I]n expounding a statute, we [are] not ... guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.” (Internal quotation marks omitted.)
 

 The purpose of the Inspection Ordinance is to make certain that various health and life-threatening violations are not present in rental dwellings. (Inspection Ordinance, § 5-531.) To make this goal a reality, § 5-532(a) provides that all rental dwellings
 
 shall
 
 be inspected at least once every three years.
 
 Id.
 
 at § 5-532(a).
 
 Camara
 
 requires consent or a warrant for a valid administrative search to occur.
 
 Camara,
 
 387 U.S. at 532-34, 87 S.Ct. at 1733. Thus, the City needs consent or a warrant to inspect rental properties. The plain language of the Inspection Ordinance makes the inspections mandatory. Absent consent, the City must exercise its right to seek a warrant. If it does not seek a warrant, then it cannot fulfill the main purpose of the Inspection Ordinance, inspecting all rental properties to eliminate deleterious conditions.
 

 If the Court reads into § 5-532(a) a requirement that the City exercise its right
 
 *634
 
 to seek a warrant when denied consent to inspect (if the City is going to deny the landlord a Certificate of Inspection), then Plaintiffs cannot claim any violation of their constitutional rights. If the Court adopted Plaintiffs’ logic here, then it would be ignoring the Supreme Court’s directive that courts choose a “reasonable alternative interpretation” that does not require them to reach constitutional issues.
 
 See Gomez,
 
 490 U.S. at 863-64, 109 S.Ct. at 2241. Because § 5-532(a) of the Inspection Ordinance
 
 requires
 
 the City to inspect, it is read to
 
 require
 
 the City to seek a warrant to inspect when refused consent. This interpretation allows the City to fulfill the mandate of the Inspection Ordinance and avoids any unconstitutional application of the Inspection Ordinance.
 

 Accordingly, the language of the Inspection Ordinance itself compels the Court to grant Defendant’s Motion to Dismiss in that the Inspection Ordinance is facially valid.
 

 (2) The Inspection Ordinance as Applied
 

 Plaintiffs claim that the Inspection Ordinance unconstitutionally coerces them to consent to warrantless administrative searches of their rental property. (Complaint at ¶ 2.) This Court will use the ripeness doctrine “to determine whether [this] dispute has yet matured to a point that warrants decision.”
 
 See
 
 Charles A. Wright, Arthur R. Miller
 
 &
 
 Edward H. Cooper, Federal Practice and Procedure, § 3532 (Cumm.Supp.1996). In deciding this question, the primary concern “is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.”
 
 Id.
 
 Thus, whether or not a case is ripe depends upon when it is brought.
 
 Armstrong World Indus., Inc. v. Adams,
 
 961 F.2d 405, 411 n. 13 (3d Cir.1992).
 

 The ripeness doctrine is used by courts “to enforce prudential limitations upon their jurisdiction,” giving the doctrine a prudential component.
 
 Peick v. Pension Ben. Guar. Corp.,
 
 724 F.2d 1247, 1261, 1261 n. 15 (7th Cir.1983),
 
 cert. denied,
 
 467 U.S. 1259, 104 S.Ct. 3554, 82 L.Ed.2d 855 (1984). Although there is some disagreement as to what extent the doctrine is grounded in the “case or controversy” requirement of Article III, it is clear that it at least partially evolved from that requirement.
 
 Id.
 
 at 1261 n. 15;
 
 see Armstrong,
 
 961 F.2d at 411 n. 12. As such, much of the case law deciding questions of ripeness contains overlapping elements of both “case or controversy” and “prudential limitations” jurisprudence.
 

 One test of whether a claim is ripe for declaratory relief rests on a court’s determination of whether:
 

 [T]he facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.
 

 Maryland Casualty Co. v. Pacific Coal & Oil Co.,
 
 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941);
 
 Government Suppliers Consol. Serv., Inc. v. Bayh,
 
 975 F.2d 1267, 1274 (7th Cir.1992),
 
 cert. denied,
 
 506 U.S. 1053, 113 S.Ct. 977, 122 L.Ed.2d 131 (1993). Another test for determining whether a claim is ripe focuses on the “fitness of the issues for judicial decision” and “the hardship to the parties of withholding court consideration.”
 
 Abbott Laboratories v. Gardner,
 
 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515-16, 18 L.Ed.2d 681 (1967).
 

 In the present case, Plaintiffs seek a declaration that the Inspection Ordinance is unconstitutional. (Complaint at ¶ a.) The Declaratory Judgment Act requires that there be an “actual controversy” between the parties. 28 U.S.C. § 2201(a). To demonstrate that a claim brought in the context of a request for declaratory relief presents a controversy ripe for judicial action:
 

 The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.
 

 Peick, 724
 
 F.2d at 1261 (7th Cir.1983) (quoting
 
 Public Serv. Comm’n v. Wycoff Co.,
 
 344 U.S. 237, 244, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952)). When a court must decide a consti
 
 *635
 
 tutional issue before granting declaratory relief, it should be “particularly vigilant” to make certain the case is ripe.
 
 Artway v. Attorney Gen. of State of N.J.,
 
 81 F.3d 1235, 1249 (3d Cir.1996),
 
 citing Communist Party of the U.S. v. Subversive Activities Control Bd.,
 
 367 U.S. 1, 81, 81 S.Ct. 1357, 1402, 6 L.Ed.2d 625 (1961).
 

 Thus, in order to present a substantial controversy which is fit for judicial decision, Plaintiffs must demonstrate that the possibility that the Inspection Ordinance may be unconstitutionally applied is not merely contingent. Plaintiffs must show that there is a “realistic danger of sustaining a direct injury as a result of the statute’s operation or enforcement.”
 
 Babbitt v. United Farm Workers Nat. Union,
 
 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895,
 
 judgment vacated,
 
 442 U.S. 936, 99 S.Ct. 2872, 61 L.Ed.2d 305 (1979). Plaintiffs do not have to await consummation of the injury, but the injury must, at the very least, be impending.
 
 Id.
 
 at 296-98, 99 S.Ct. at 2308 (quoting
 
 Pennsylvania v. State of West Virginia,
 
 262 U.S. 553, 43 S.Ct. 658, 663, 67 L.Ed. 1117,
 
 ajfd,
 
 263 U.S. 350, 44 S.Ct. 123, 67 L.Ed. 1144 (1923)).
 

 In
 
 Hometown Co-Operative Apartments v. City of Hometown,
 
 515 F.Supp. 502 (N.D.Ill. 1981), the Northern District of Illinois dealt with an ordinance similar to the one in the present case.
 
 [1]
 
 Like the City’s Inspection Ordinance, the
 
 Hometown
 
 ordinance provided a warrant procedure for situations in which a landlord refused to consent to an inspection but was ambiguous as to whether the municipality was
 
 required
 
 to obtain a warrant in the event of a refusal to consent to inspection.
 
 Id.
 
 at 503. The plaintiffs in
 
 Hometown
 
 also sought a declaratory judgment that the ordinance was unconstitutional.
 
 Id.
 
 The
 
 Hometown
 
 court held that the issue was not ripe because there was no “real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.”
 
 Id.
 
 at 504. (Internal quotation marks omitted.) In other words, the matter did not present a justiciable actual controversy within the context of the Declaratory Judgment Act because the alleged injury was contingent and abstract rather than impending.
 

 In the present case, the City makes two arguments why the Inspection Ordinance should not be declared unconstitutional. First, it argues that it will act in good faith and seek a warrant upon a refusal to permit inspection. (Memo, in Supp. at 3.) Second, the City further argues that Plaintiffs do not allege that the City has refused to seek a warrant or has been unsuccessful in seeking a warrant, making the matter not ripe because no “impending” injury is presented.
 
 Id.
 
 at 6. The City concludes that “speculation and conjecture as to possible future events is inappropriate at this time.”
 
 Id.
 
 (quoting
 
 Hometown,
 
 515 F.Supp. at 504).
 

 Notwithstanding the City’s arguments, if Plaintiffs refuse consent and the City declines to pursue a warrant, Plaintiffs will be forced to consent to a warrantless search to obtain a valid Certificate of Registration in order to legally rent their premises. (Memo, in Opp. at 22.) However, according to the rationale of
 
 Hometown
 
 and the guidelines set forth in
 
 Abbott, Maryland Casualty, Government Suppliers,
 
 and
 
 Peick,
 
 this contingent possibility is insufficient to render the Inspection Ordinance unconstitutional because the alleged injury is not immediate and real. “[T]he possibility that circumstances will arise in the future [in which a Plaintiff will be coerced into consenting to a warrantless inspection] does not state a ease or controversy ripe for judicial determination.”
 
 Hometown,
 
 515 F.Supp. at 505. Plaintiffs’ constitutional argument does not pose an issue that is fit for judicial decision at the present time.
 
 See Abbott,
 
 387 U.S. at 147-49, 87 S.Ct. at 1515. Further, they face no hardship at this time if the Court finds this matter unripe.
 
 See id.
 
 at 153-54, 87 S.Ct. at 1518 (inferring that the requisite hardship exists when plaintiffs must immediately and significantly change how they conduct their affairs).
 

 Accordingly, the Court grants without prejudice Defendant’s Motion to Dismiss in that Plaintiffs’ claim that the Inspection Ordinance is unconstitutional as applied is not ripe for adjudication.
 

 
 *636
 
 B. Fair Housing Act
 

 Plaintiffs allege that the Inspection Ordinance as construed and applied violates 42 U.S.C. § 3604(a) of the Fair Housing Act (“Act”). (Complaint at ¶ 2, request for relief at ¶ b.) Section 3604(a) states:
 

 [I]t shall be unlawful—
 

 (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin.
 

 Fair Housing Act, Title 42 U.S.C. § 3604(a).
 

 When reviewing a Motion to Dismiss, a court construes the facts in favor of the non-moving party.
 
 Bontkowski,
 
 998 F.2d at 461. Even so, Plaintiffs’ claim, as pleaded, fails to state a cause of action under § 3604(a). Assuming arguendo that Plaintiffs are proper plaintiffs and the City is a proper defendant under § 3604(a) of the Act, Plaintiffs must demonstrate that the City’s adoption of the Inspection Ordinance was discriminatory according to the Act.
 
 See
 
 42 U.S.C. § 3604(a).
 

 Plaintiffs make no allegation that the City is refusing to sell or rent a dwelling or refusing to make a dwelling available to any Plaintiff, or to any other person.
 
 See
 
 42 U.S.C. § 3604(a);
 
 Housing Justice Campaign v. Koch,
 
 164 AD.2d 656, 565 N.Y.S.2d 472,
 
 appeal denied,
 
 78 N.Y.2d 858, 575 N.Y.S.2d 454, 580 N.E.2d 1057 (1991). Plaintiffs make no allegations whatsoever with respect to race, color, religion, sex, familial status, or national origin.
 
 See
 
 42 U.S.C. § 3604(a). Plaintiffs have failed to allege
 
 any
 
 facts in regard to a violation of the Fair Housing Act, let alone facts sufficient to state a claim. Accordingly, the Court grants Defendant’s Motion to Dismiss as to Plaintiffs’ Fair Housing Act claim and sets a 21-day deadline for Plaintiffs to replead.
 

 Conclusion
 

 For the reasons set forth above, Defendant’s Motion To Dismiss [# 3] is GRANTED on the merits in that the Inspection Ordinance is constitutional on its face and GRANTED WITHOUT PREJUDICE in that the issue of whether the Inspection Ordinance is constitutional as applied is not ripe for adjudication at this time. The Motion to Dismiss is GRANTED as to Plaintiffs’ Fair Housing Act allegation, and Plaintiffs have 21 days to replead this issue.
 

 [1]
 

 . An earlier version of the Hometown ordinance was found unconstitutional in
 
 Hometown CoOperative Apartments v. City of Hometown,
 
 495 F.Supp. 55 (N.D.Ill.1980).