COLEMAN, Justice,
concurring in part and dissenting in part:
¶ 32. While I agree with the majority that Kenneth Crook has standing to sue, constitutional claims also are subject to questions of mootness and ripeness. I would hold that the inspection provisions, as a whole, and the judicial warrant standard of the Rental Inspection and Property Licensing Act (hereinafter: “RIPLA”), addressed by today’s majority opinion, qualify neither for a facial challenge nor an as-applied challenge. Rather, I would hold the advance consent provision of RIPLA unconstitutional under a facial challenge, and in doing so, I would affirm the holding of the Court of Appeals in part. Thus, with respect, I concur in part and dissent in part and result.
¶ 33. The ripeness doctrine arises, at least partially, from the “case or controversy” requirement of Article III. Tobin v. City of Peoria, Ill., 939 F.Supp. 628, 634 (C.D.Ill.1996). “The Supreme Court of the United States has held that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justicia-bility even when they address issues of federal law....” The Hotboxxx, LLC v. City of Gulfport, 154 So.3d 21, 27 (Miss.2015) (quoting ASARCO Inc., v. Kadish, 490 U.S. 605, 617, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989)). However, we have adopted, as binding precedent, the constitutional ripeness doctrine, and when a case is premature, it will be dismissed, unless it falls under a limited exception, grounded in judicial economy and fairness.[3] State ex *941 rel. Holmes v. Griffin, 667 So.2d 1319, 1325 (Miss.1995).
¶ 34. The Supreme Court of the United States has set forth two factors for considering whether a case is ripe for review: (1) whether the issue is fit for judicial review, and (2) whether denial of judicial review would impose substantial hardship on the petitioners. Susan B. Anthony List v. Driehaus, — U.S. -, 134 S.Ct. 2334, 2347, 189 L.Ed.2d 246 (2014). When the petitioner presents an issue that is purely legal, it may be fit for review, as further factual development would not be needed. Id. Courts also have defined whether a controversy is ripe for review by stating that “[t]he disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.” Tobin v. City of Peoria, 939 F.Supp. 628, 634 (C.D.Ill.1996) (quoting Peick v. Pension Benefit Guar. Corp., 724 F.2d 1247, 1261 (7th Cir.1983)). The Tobin Court further stated that the concern is “whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.” Tobin, 939 F.Supp. at 634 (internal quotation omitted).
¶ 35. Important to the case sub judice are the differing degrees of difficulty between mounting a valid facial challenge on the one hand, and a valid as-applied challenge on the other.
A facial challenge to a legislative Act, the Court has other times said, is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).
Under our constitutional system, courts are not roving commissions assigned to pass judgment on the validity of the Nation’s laws. Broadrick v. Oklahoma, 413 U.S. 601, 610-611, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Instead, the judicial Power is limited to deciding particular Cases- and Controversies. U.S.' Const., Art. Ill, § 2. Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. Broadrick, 413 U.S., at 610, 93 S.Ct. 2908.
Shelby Cnty., Ala. v. Holder, — U.S. -, 133 S.Ct. 2612, 2645, 186 L.Ed.2d 651 (2013) (internal quotation marks omitted). In a viable facial challenge, “no set of circumstances exists under which the [ordinance] would be valid.” United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In other words, every future event would'occur as anticipated, and further factual development would serve no purpose. Thus, the Court’s denial of the claim would not serve the principles of judicial economy or the policy behind the ripeness doctrine.
¶ 36. The arguments of the parties may be divided into three main issues: (1) whether the warrant standard and inspection provisions are constitutional under Camara v. Municipal Court of City & County of San Francisco, 387 U.S. 523, 87 *942 S.Ct. 1727, 18 L.Ed.2d 930 (1967); (2) whether the advance consent provision is constitutional; and (3) whether the Court of Appeals correctly held Crook’s arrest and conviction and the bond requirement to be proper under Mississippi law and supported by the weight of evidence. For each issue, the Court must determine whether the claims, under the instant facts, are ripe for an as-applied challenge or, in the alternative, present a viable facial challenge.
1) The Warrant Standard and Inspection Provisions
¶ 37. Relying on the United States Supreme Court’s decision in Camara, the majority argues that the judicial warrant standard is unconstitutional because it “authorizes the issuance of a warrant without probable cause.” (Maj. Op. ¶ 25). The Camara Court defined “probable cause” in the context of administrative searches, writing, “In determining whether a particular inspection is reasonable — and thus in determining whether there is probable cause to issue a warrant for that inspection — the need for the inspection must be weighed in terms of [the ordinance’s] reasonable goals of code enforcement.” Camara, 387 U.S. at 535, 87 S.Ct. 1727. The Camara Court further explained the reasonableness standard behind administrative searches, stating:
“[P]robable cause” to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such- standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.
Id. at 538, 87 S.Ct. 1727 (emphasis added). In other words, probable cause is determined on a case-by-case analysis, and the reasonableness of the search depends on the standards used for conducting it.
¶ 38. RIPLA states that the judicial warrant must be based on the “[r]ental license, lease, or rental agreement.” Under the pertinent facts, Crook was not subjected to a warrantless search or a search involving an insufficient warrant standard. Thus, as the majority notes, an as-applied challenge is not ripe for review.
¶ 39. The majority, on the other hand, concludes that a facial challenge is ripe, stating, “Because RIPLA expressly allows inspection warrants to issue without probable cause, it effectively contains no warrant requirement. And an inspection provision with no warrant requirement is facially unconstitutional.” (Maj. Op. ¶ 26). While I do not disagree that an inspection provision with no warrant requirement may be ripe for a facial challenge, I do not think the instant case presents such a situation. RIPLA contains a warrant requirement, and in order for the Court to consider the constitutionality of the warrant requirement, we must determine whether, as discussed above, “no set of circumstances exists under which the Act would be valid.” Holder, 133 S.Ct. at 2645 (citing United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)) (emphasis added). In other words, the key to a successful facial challenge is not, as the majority concludes, whether RIPLA may be unconstitutionally applied. The key is whether RIPLA, as it is currently written, could never be constitutionally applied and valid. Under RIPLA, the search warrant feasibly could be based on the need to ensure the property upholds *943 the housing codes of the city, technical codes of the city, zoning ordinances, or housing laws as stated in Section 6.a. Thus, the warrant could be constitutionally applied and valid, and therefore, the warrant requirement is not ripe for a facial challenge.
2) The Advance Consent Provision
¶40. Section 7.b. states: “The Owner, as a condition to the issuance of the Rental License, shall consent and agree to permit and allow the Building Official to make the following inspections of the Premises, Dwelling, Dwelling Units, and Rental Units when and as needed to ensure compliance with the provisions of RIPLA....” In the instant case, Crook never ran afoul of the advance consent provision and was not convicted of failing to comply with it. He never received a license because he never posted the necessary bond. Thus, further factual development would be needed for Crook to raise a ripe, as-applied challenge. However, the issue does present a viable facial challenge.
¶41. The Fourth Amendment to the United States Constitution states:
The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const, amend. IV. Similarly, the Mississippi Constitution states:
The people shall be secure in their persons, houses, and possessions, from unreasonable seizure or search; and no warrant shall be issued without probable cause, supported by oath or affirmation, specially designating the place to be searched and the person or thing to be seized.
Miss. Const, art. 3, § 23. The key determination for the Court is whether, given the totality of the circumstances, the advance consent provision is unreasonable, and the unreasonableness of the provision would manifest in every possible circumstance. Salerno, 481 U.S. at 745, 107 S.Ct. 2095.
¶ 42. Point-of-sale inspection licenses have been at issue in many cases around the country, and the majority understandably looks to them for guidance. See Hometown Co-Operative Apartments v. City of Hometown, 515 F.Supp. 502, 503 (N.D.Ill.1981) (“[TJhis Court held that the predecessor of Hometown’s present ordinance was ‘unconstitutional under the fourth amendment insofar as it fail(ed) to provide for a warrant as a prerequisite for the point of sale inspection.’ ”); Mann v. Calumet City, Ill., 588 F.3d 949, 951 (7th Cir.2009) (“ ‘Point of sale’ ordinances such as this one are common and have withstood constitutional attack in all cases that we know of in which the ordinance avoided invalidation under the Fourth Amendment by requiring that the city’s inspectors obtain a warrant to inspect a house over the owner’s objection.”). However, point-of-sale inspection ordinances are factually distinct from RIPLA because inspections performed as part of a point-of-sale inspection ordinance are triggered by a certain, specific event, such as the sale or lease of a property. Under RIPLA, a rental owner gives advance consent to inspections which may occur “when and as needed to ensure compliance.”[4] RIPLA’s inspection provi *944 sions give the city much more freedom to engage in searches than does a point-of-sale inspection ordinance.
¶ 43. Crook relies on Dearmore v. City of Garland, 400 F.Supp.2d 894 (N.D.Tex.2005), to show the unconstitutionality of advance consent provisions. In Dearmore, owners of rental property were forced to apply for rental property permits, and as a condition of the permit, the city would inspect the property at least once a year. Id. at 897. If the owner failed to allow the inspection, he or she automatically was charged with an offense. Id. The Dear-more Court, in determining that the petitioner had a valid cause of action, opined that landowners are “between a rock and a hard place” because the owner must choose between:
(1) the denial of a permit for refusing to consent to the inspection and thus loss of the ability to make commercial use of one’s property for economic gain; (2) the withdrawal of consent, which will result in the imposition of substantial monetary fines for refusing to allow the inspection; or (3) consent in advance to the warrantless search or inspection, regardless of the necessity of such an inspection or search.
Id. at 904. Unlike the Dearmore ordinance, RIPLA allows the owner later to refuse entry, and refusal of entry is not an automatic offense. However, I am of the opinion that, under RIPLA’s provision that predicates the very issuance of a permit on the giving of advance consent, although refusal may occur at the time of the search, there is no denying that the owner was forced to choose between giving advance consent, forgoing the business of being a landlord, or renting without a rental license and subjecting himself to criminal penalties.
¶ 44. RIPLA also is distinguishable from the ordinance in Tobin, discussed above. In Tobin, the ordinance at issue stated that an inspection of a rental property would occur “at least once every three years,” and that, before the inspection, the city must give notice of the inspection and must advise “these persons of their right to refuse inspection.” Tobin, 939 F.Supp. at 632. Unlike RIPLA, the Tobin ordinance does not contain an advance consent provision and the city must inform the occupant of her right to refuse entry.
¶ 45. In another analogous case, Baughman v. Board of Zoning Appeals for Harrison Township, 2002 WL 1773043 (Ohio 2002), the Baughman Court was faced with deciding whether a conditional use permit, that required the owner to give advance consent for the Zoning Inspection to search the premises “as frequently as necessary to ensure conformity with the conditions set herein,” was constitutional. Id. at *4 (¶ 18). The court reasoned that unlimited access could easily be used to “harass and obstruct the lawful operation of business,” and concluded that requiring a permit applicant to “consent in advance to an unlimited number of warrantless searches as a condition to engage in an *945 otherwise lawful enterprise” was unreasonable and therefore unconstitutional. Id. at *4 (¶ 20). While under RIPLA’s schema, if the owner or tenant refuses entry, a judicial warrant must be sought; there is no denying that the owner was forced, prior to the point at which he or she refuses entry, to give advance consent to a limitless number of warrantless searches.
¶ 46. The Supreme Court has held administrative searches to be reasonable when supported by a warrant. Camara, 387 U.S. at 538, 87 S.Ct. 1727. The Supreme Court aptly pointed out that whether a warrant is necessary “depends in part upon whether the burden of obtaining a warrant is likely to frustrate the governmental purpose behind the search.” Id at 533. While the City of Madison, no doubt, has a great policy interest in maintaining rental properties, the interest of the city is not in any way frustrated in the absence of advance consent, as it would not impose an undue burden to require it to take the time needed to obtain a warrant, if necessary.
¶ 47. No matter the individual circumstances of each search, the advance consent provision forces every rental owner to choose between giving advance consent, forgoing renting the property, or renting without a license, thereby subjecting oneself to criminal penalties. When one does not have any other reasonable alternatives, I am of the opinion that the choice of whether to give consent exists only as a mirage. Ergo, pursuant to a facial challenge, I would hold the advance consent provision to be unconstitutional. Further, under RIPLA’s severability clause, my holding would deem the advance consent provision a nullity; thus, the city may continue issuing licenses and enforcing all other requirements in place for landlords to obtain one. However, no licensed landlords should be considered to have given advanced consent to a search.
3) Crook’s Conviction, Arrest, and the $10,000 Bond, Line of Credit, or Collateral
¶ 48. The majority would overturn Crook’s conviction. I disagree, and I would uphold the result reached by the Court of Appeals pertaining to Crook’s conviction, arrest, and the bond requirement.
¶49. Under RIPLA, a party is not deemed to give advance consent to an inspection until the party is issued a rental license.[5] In other words, the issuance of a rental license triggers the advance consent provision. Crook was convicted of renting property without a rental license under RIPLA. Although Crook submitted a rental license application, he failed to post the bond and therefore was never issued a rental license. Thus, Crook never gave advance consent to an inspection, and his conviction should be upheld.
¶ 50. For foregoing reasons, I respectfully concur in part and dissent in part and in result.
RANDOLPH, P.J., AND PIERCE, J., JOIN THIS OPINION. WALLER, C.J., JOINS THIS OPINION IN PART.

. The Court stated the exception as follows:
However, under the principles of judicial economy and fairness, in conjunction with the attorney general’s failure to respond to James' request to pursue the public writ of quo warranto, and in the interest of the *941 public policy involved with the merits of the issues raised today, we will not dismiss this case for a procedural defect.
Griffin, 667 So.2d at 1325.

. RIPLA states in section 6.a. that owners of rental property have an obligation to comply with:
i. The provisions of RIPLA.
ii. All housing codes of the City, however titled or designated.
*944 iii. Technical codes of the City in effect at the time building permits were issued for such Dwelling, including the building, electrical, plumbing, and mechanical codes.
iv. The zoning ordinance and the subdivision and environmental ordinances, codes and regulations of the City, including but not limited to the landscape ordinance.
v. State and federal housing laws and administrative regulations.
vi. Judicial and administrative decrees enforcing any of the provisions of RIPLA; the housing code, technical code, zoning code, and subdivision and environmental regulations of the city; and/or state and federal housing laws and administrative regulations.

. RIPLA states: "The Owner, as a condition to the issuance of the Rental License, shall consent and agree to permit and allow the Building Official to make the following inspections of the Premises, Dwelling, Dwelling Units, and Rental Units when and as needed to ensure compliance with the provisions of RIPLA....”