# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KM-00081-COA

KENNETH M. CROOK A/K/A KENNETH CROOK A/K/A K MICHAEL CROOK A/K/A KENNETH MICHAEL CROOK A/K/A MIKE CROOK

APPELLANT

v.

CITY OF MADISON, MISSISSIPPI

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 12/12/2012 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | STEVE C. THORNTON |
| ATTORNEY FOR APPELLEE: | JOHN HEDGLIN |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| TRIAL COURT DISPOSITION: | AFFIRMED CONVICTION OF TWO COUNTS OF VIOLATING A CITY ORDINANCE OF THE CITY OF MADISON AND FINE OF $300 ON EACH COUNT |
| DISPOSITION: | AFFIRMED - 03/25/2014 |
| MOTION FOR REHEARING FILED: | 04/08/2014 - DENIED; AFFIRMED - 09/30/2014 |
| MANDATE ISSUED: | |

**EN BANC.**

**ISHEE, J., FOR THE COURT:**

### MODIFIED OPINION ON MOTION FOR REHEARING

¶1.     The motion for rehearing is denied. We withdraw our original opinion and substitute this modified opinion.

¶2.     In 2011, Kenneth Michael Crook was convicted of two counts of violating a city ordinance in the City of Madison (the City) and sentenced to pay a fine of $300 on each

count. Crook appealed the judgment to the Madison County Circuit Court, which affirmed Crook's conviction and sentence. Aggrieved, Crook now appeals the circuit court's judgment.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3.  On July 15, 2008, the City adopted an ordinance entitled "Rental Inspection and Property Licensing Act" (RIPLA). An amended version was later adopted on May 18, 2010. The stated purpose of RIPLA is "to preserve and promote the public health, safety, and general welfare of the City's residents . . . and to assure the proper maintenance of the City's residential rental housing stock." RIPLA requires owners of single-household or multiple-household dwellings located in the City to obtain a rental license in order to rent a property.

¶4.  To obtain the rental license, owners must submit a written application with a licensing fee of $100 per rental unit to the City's building official. Further, owners must post a $10,000 bond, collateral, or letter of credit per rental unit as surety for any future correction orders that may be issued by the building official pursuant to RIPLA. The rental license is valid for one year. Upon obtaining a rental license, owners must be issued a current and valid certificate of compliance that must be displayed at each rental property.

¶5.  As a condition to the issuance of the rental license, owners must consent to inspections of all portions of the premises and dwelling by the building official. The purpose of the inspections is to ensure compliance with RIPLA provisions. The building official must provide the owner with reasonable advance notice of the date and time of the inspection. If an owner or a tenant refuses entry, the building official must obtain a judicial warrant authorizing entry. Any person who violates any provision of RIPLA is guilty of a

2

misdemeanor and must pay a fine of $300 per day for a violation of each offense.

¶6. Crook owns residential property located at 127 Cypress Drive in Madison, Mississippi (Cypress Drive property). On August 14, 2008, the City's building and permit department sent a letter to all owners of rental property in the City informing them of the newly adopted RIPLA. The letter outlined the requirements of RIPLA, including the steps needed to be taken to ensure compliance.

¶7. At the time, the City believed Crook's Cypress Drive property was a rental property, so he received a copy of the letter. Subsequently, Crook was sent another letter on October 20, 2008, from the City stating that it had not received a licensing fee from Crook for the Cypress Drive property. This letter informed Crook of the consequences that would occur should a RIPLA violation be found.

¶8. On February 12, 2009, Crook filled out an application for a rental license and paid the $100 licensing fee. Crook, however, never posted a $10,000 bond, collateral, or letter of credit as surety. Therefore, Crook was not issued a rental license. On March 11, 2009, Angie Gelston, a code-enforcement officer for the City, filed charges against Crook at the Madison Police Department for violating RIPLA. Gelston alleged that Crook had continued to rent the Cypress Drive property without a rental license despite notifications that to do so was in violation of RIPLA. Crook sent the City a letter on March 26, 2010, requesting the return of the licensing fee and stating that he would be personally occupying the Cypress Drive property, thereby removing it from the reach of RIPLA.

¶9. On May 20, 2010, Bill Foshee, the City's director of building and permits and code enforcement, sent a letter to Crook alleging that Crook was in violation of Section 8 of

3

RIPLA for renting the Cypress Drive property without a current rental license. Foshee also informed Crook that he had fifteen days from the date of the letter to comply with RIPLA or all utilities would be discontinued pending compliance.

¶10. Crook responded to Foshee on June 1, 2010, stating that RIPLA was not applicable or enforceable since the Cypress Drive property was no longer being used for rental purposes. Crook averred that he had entered into an option-to-purchase contract with Tammy Thompson. Subsequently, Foshee reported the violation to the Madison Police Department and an arrest warrant was issued for Crook. Crook was arrested on October 6, 2010, for renting the Cypress Drive property without a license in violation of RIPLA.

¶11. On January 13, 2011, Crook was convicted in Madison Municipal Court on two counts of violating RIPLA. Crook appealed his charges to the County Court of Madison County. Crook filed a motion to dismiss, alleging: (1) RIPLA was unconstitutional, and thus invalid; (2) the warrants issued for his arrest were invalid for lack of probable cause; and (3) RIPLA violated state law. At trial, Crook, Gelston, Foshee, Thompson, and Duke Swyers testified.

¶12. Crook testified that Swyers resided at the Cypress Drive property from approximately November 2007 to November 2009. He maintained that Swyers wanted to buy the house from the very beginning. Crook stated that he and Swyers had an oral agreement for a purchase price and that rental payments would go towards a down payment on the property. Crook admitted, however, that there was never a written contract, and the agreement to purchase subsequently ceased when Swyers moved out in November 2009. Subsequently, Crook stated, he entered into a written option-to-purchase agreement with Thompson on

4

March 13, 2010. He asserted that he informed Thompson that he had no intention of renting the Cypress Drive property.

¶13. Gelston testified that she had driven by the Cypress Drive property on several occasions and that Crook was not the person occupying the home. Rather, she observed other people living in the home. She could not testify, however, that anyone occupied the home on March 11, 2009, the date she signed her affidavit, but stated she knew it was a rental home based on prior conversations with Crook and the incomplete application for the rental license. Foshee testified that he had also been to the Cypress Drive property numerous times and saw vehicles in the driveway, but that he never saw Crook or anyone else at the home. He stated that he knew Crook was renting the Cypress Drive property on July 1, 2010, because he had been contacted by Crook's tenant, Thompson.

¶14. Thompson testified that she entered into an option-to-purchase contract with Crook in March 2010. She maintained, however, that she never intended to purchase the home and Crook knew of her intentions. She admitted under oath that Crook instructed her not to tell anyone it was a rental property and that Crook would sometimes ask to spend the night on the couch, so he could give the appearance that he was occupying the home. Duke Swyers testified that from 2007 to 2009, he rented the Cypress Drive property from Crook. He stated that he had discussed entering into an option-to-purchase contract with Crook in October 2008, but ultimately decided against it. Further, he maintained that he never signed any purchase agreement or verbally agreed to purchase the home.

¶15. After a bench trial on June 22, 2011, the county court upheld Crook's convictions. Crook was then sentenced to pay a fine of $300 plus court fees. Crook appealed the

5

judgment to the Madison County Circuit Court. The circuit court upheld the judgment of the county court on December 12, 2012. Aggrieved, Crook now appeals, arguing: (1) RIPLA is constitutionally defective because it contains an unconstitutional condition; (2) RIPLA is void because it violates Mississippi law; (3) the arrest warrants issued were not supported by probable cause; and (4) the trial court's decision was based on insufficient evidence and was against the overwhelming weight of the evidence.

## STANDARD OF REVIEW

¶16. "The standard of review for a judgment entered following a bench trial is well settled. In a bench trial, the trial judge is 'the jury' for all purposes of resolving issues of fact." *Sendelweck v. State*, 101 So. 3d 734, 738-39 (¶19) (Miss. 2012). "The Mississippi Supreme Court has stated that: for review of the findings of a trial judge sitting without a jury, the appellate court will reverse only where the findings of the trial judge are manifestly erroneous or clearly wrong." *Id.* at 739 (¶19) (internal citations omitted).

## DISCUSSION

### I. RIPLA and the Fourth Amendment

¶17. This Court applies a de novo standard of review when addressing constitutional issues. *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 243 (¶3) (Miss. 2012). "Because there is a strong presumption that a legislative enactment is valid, the party challenging a statute's constitutionality must prove his or her case beyond a reasonable doubt." *Fulgham v. State*, 47 So. 3d 698, 700 (¶8) (Miss. 2010). Crook alleges that RIPLA imposes an unconstitutional condition that makes the ordinance invalid. This is a case of first impression in Mississippi.

¶18. It is well settled that the unconstitutional-conditions doctrine provides that the

government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . . ." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). If it could, the "exercise of those [interests] would in effect be penalized and inhibited." *Id.*

¶19.  Crook contends that section 7 of RIPLA is constitutionally defective by the inclusion of the following:

> 7.  INSPECTION AND CERTIFICATION
>
> . . . .
>
>> b.  <u>Owner consent to inspection</u>. The [o]wner, as a condition to the issuance of the [r]ental [l]icense, shall consent and agree to permit and allow the [b]uilding [o]fficial to make the following inspections of the [p]remises, [d]welling, [d]welling [u]nits, and [r]ental [u]nits when and as needed to ensure compliance with the provisions of RIPLA:
>>
>>> i.  Access to inspect all portions of the [p]remises and [d]welling, including common areas, storage areas, community buildings, athletic facilities, club rooms, equipment rooms, parking areas, and other common facilities.
>>>
>>> ii.  Access to inspect all unoccupied [d]welling [u]nits.
>>>
>>> iii.  Access to inspect any [r]ental [u]nit when a complaint is filed by a [t]enant of such [r]ental [u]nit or any [c]ity department to the effect that such [r]ental [u]nit may be existing in violation of any provision of RIPLA.
>>>
>>> iv.  Access to inspect any [r]ental [u]nit upon termination of a lease or rental agreement, reletting of such [r]ental [u]nit, or sale of the [d]welling or any part of the [d]welling containing such [r]ental [u]nit.

Crook argues that owners of rental property in the City are given two options under these

terms of RIPLA: (1) owners can give advance consent to warrantless inspections and receive a rental license; or (2) owners can refuse the advance consent, not receive a rental license, and thus, subject themselves to criminal penalties for renting property without a license. He asserts that the provision requiring consent in advance to warrantless inspections prohibits owners from engaging in an otherwise lawful activity unless they agree to waive their Fourth Amendment rights. Hence, Crook maintains that this is an unconstitutional condition that makes RIPLA constitutionally defective.

¶20. The City argues that the provision is not invalid because sections 7 through 8 of RIPLA include the following provisions:

7. INSPECTION AND CERTIFICATION

. . . .

    d. <u>Right of Entry</u>. For the purpose of making inspections and repairs required and authorized by the provisions of RIPLA, the [b]uilding [o]fficial is hereby authorized to enter, inspect, repair, alter, and improve all [p]remises, [d]wellings, [d]welling units, and [r]ental [u]nits in accordance with the provisions of RIPLA.

. . . .

        iii. Should a [t]enant or [o]wner refuse entry, the [b]uilding [o]fficial shall be authorized by virtue of the terms of the [r]ental [l]icense to secure a judicial warrant authorizing entry by the terms of the [r]ental [l]icense, lease, or rental agreement.

. . . .

8. NOTICE AND ORDERS

a. <u>Notice of inspection</u>. The [b]uilding [o]fficial shall provide reasonable advance notice to the [o]wner as to the date and time of inspection. If such notice indicates that one (1) or more [r]ental [u]nits will be inspected, the [o]wner shall provide a copy of such notice to each affected [t]enant.

The City asserts that the advance-consent provision challenged by Crook is valid since RIPLA contains express provisions for notice to the owner and the tenant of any requests for future inspections and, upon failure of the owner or the tenant to consent to such an inspection, the security of a judicial warrant in order to authorize entry. The City argues that the requirement of advance notice coupled with a warrant procedure provides owners and tenants with an opportunity to refuse entry, even with the advance-consent provision, and therefore makes RIPLA constitutional and valid.

¶21. Crook claims that the warrant-procedure provision in RIPLA is not applicable to the advance-consent provision. He contends that the warrant-procedure provision does not come into effect until the rental license has been obtained and the building official demands entry on the basis of the rental license.

¶22. The City also argues that Crook has failed to establish that RIPLA is unconstitutional under either a facial challenge or an as-applied challenge. To successfully assert a facial challenge, "the challenger must establish that no set of circumstances exist[s] under which the Act would be valid." *United States v. Salerno*, 487 U.S. 739, 745 (1987). In any as-applied challenge, the challenger must demonstrate "a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." *Id*.

¶23. The City argues that Crook lacks an expectation of privacy in the premises since the

property is a rental property. The City also argues that since the inspection provisions specifically were never applied to Crook, his alleged injury is contingent and abstract rather than impending. Therefore, the City contends that his as-applied challenge fails for lack of ripeness. Hence, the City maintains that Crook lacks the requisite standing to bring a constitutional claim.

¶24. In regard to his facial challenge, Crook contends that there are no circumstances in which an owner could obtain a rental license without giving advance consent, unless the City simply failed to enforce RIPLA as written. The City counters that the advance-notice provision and warrant-procedure provision provide a protection for owners. In reference to his as-applied challenge, Crook contends that the City's enforcement of RIPLA places him in realistic danger of sustaining a direct injury in the form of criminal prosecution for violating the ordinance by renting property without a license.

### A. Standing

¶25. The requirements for a party to have standing to sue have been addressed by the Mississippi Supreme Court:

> It is well settled that "Mississippi's standing requirements are quite liberal." This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution contains no such restrictive language. Therefore, this Court has been "more permissive in granting standing to parties who seek review of governmental actions." In Mississippi, parties have standing to sue "when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law."

*Burgess v. City of Gulfport*, 814 So. 2d 149, 152-53 (¶13) (Miss. 2002) (quoting *State v.*

*Quitman*, 807 So. 2d 401, 405 (¶11) (Miss. 2001)). "'Colorable,' when used to describe a claim or action, means 'appearing to be true, valid, or right.'" *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814, 826 n.13 (Miss. 2009). "Further, for a plaintiff to establish standing on grounds of experiencing an adverse effect from the conduct of the defendant/appellee, the adverse effect experienced must be different from the adverse effect experienced by the general public." *Hall v. City of Ridgeland*, 37 So. 3d 25, 33-34 (¶24) (Miss. 2010) (quoting *Burgess*, 814 So. 2d at 153 (¶14)).

¶26. We find that Crook's arrest and subsequent convictions for renting a property without a license in violation of RIPLA involve a colorable interest in the subject matter of this litigation, as well as exemplify his unique experience of an adverse effect from the conduct of the City. This satisfies the standing requirement. Therefore, we will address Crook's argument that RIPLA is unconstitutional.

### B. Constitutionality

¶27. Crook cites to *Camara v. Municipal Court of San Francisco*, 387 U.S. 523 (1967), the first in a long line of cases concerning municipal ordinances that require consent to future inspections. In *Camara*, a tenant in San Francisco, California, refused to allow an inspection of the premises without a search warrant. *Id.* at 526. The tenant was arrested after being charged with violating a lawful inspection, as permitted by the San Francisco Housing Code. *Id.* at 527. The Supreme Court held "that administrative searches of the kind at issue here are significant intrusions upon the interests protected by the Fourth Amendment, [and] that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees . . . ." *Id.* at 534.

11

¶28. While *Camara* does not involve an ordinance with an advance-consent provision, this decision regarding an administrative search led to an outgrowth of municipalities creating ordinances with advance-consent provisions and warrant-procedure provisions. Crook also cites to *Dearmore v. City of Garland*, 400 F. Supp. 2d 894 (N.D. Tex. 2005). In *Dearmore*, the City of Garland, Texas, imposed an ordinance similar to RIPLA. *Id.* at 897. The ordinance provided that owners of residential property must obtain a license in order to rent the property. *Id.* As a condition of the license, owners were to consent to an inspection of the property from the City of Garland once a year, and failure to do so was an offense. *Id.* The ordinance, however, also provided authorization for the City of Garland to obtain a search warrant if consent to the inspection was refused or could not be obtained. *Id.*

¶29. The court stated:

> [T]he property owner is being penalized for his failure to consent in advance to a warrantless search of unoccupied property. The property owner's consent thus is not voluntary at all. A valid consent involves a waiver of constitutional rights and must be voluntary and uncoerced. The alternatives presented to the property owner are to consent in advance to a warrantless inspection, or to face criminal penalties; thus consent is involuntary. On the other hand, if the owner does not consent to the warrantless search, he does not receive a permit. The whole purpose of receiving a permit is to rent the property for commercial purposes. Without a permit, the owner cannot engage in lawful commercial activity. The owner is thus faced with equally unavailing situations.

*Id.* at 902-03 (internal citations omitted). Subsequently, the district court enjoined the City of Garland from enforcing any provision of the ordinance that required a person renting property to allow inspection of the property as a condition of issuing a permit, or penalized a person for refusing an inspection. *Id.* at 906. The City subsequently amended the ordinance, removing the provisions related to consent and clarifying the circumstances under

12

which the City of Garland may seek a warrant. *Dearmore v. City of Garland*, 519 F.3d 517, 520 (5th Cir. 2008). The ordinance in *Dearmore* differed from RIPLA in that an owner's failure to consent to an inspection was an offense. In contrast, RIPLA does not state that refusal of an inspection would result in a penalty. Crook also cites to the unpublished decision of *Makula v. Village of Schiller Park*, 1995 WL 755305 (N.D. Ill. 1995), as expressing the same theory of law presented in *Dearmore*.

¶30. Crook contends that the court's application of the unconstitutional-conditions doctrine in *Dearmore* is clear: a coerced advance consent made the ordinance constitutionally defective. Crook references several other cases in which courts found similar ordinances unconstitutional because they forced owners to consent in advance to inspections. *See, e.g.*, *Brower v. Village of Bolingbrook*, 735 F. Supp. 768, 776 (N.D. Ill. 1995); *Hometown Coop. Apartments v. City of Hometown*, 495 F. Supp. 55, 60 (N.D. Ill. 1980); *State v. Finnell*, 685 N.E.2d 1267, 1269-72 (Ohio 1996); *Wilson v. Cincinnati*, 346 N.E.2d 666, 671 (Ohio 1976); *Sokolov v. Village of Freeport*, 420 N.E.2d 55, 57-59 (N.Y. 1981); *Pashcow v. Town of Babylon*, 410 N.Y.S.2d 192, 193 (N.Y. Sup. Ct. 1976). Nonetheless, unlike RIPLA, the ordinances in the above cases did not provide a warrant procedure.

¶31. There have been several cases that have ruled that ordinances requiring owners to consent to an inspection as a condition of obtaining a license are not facially unconstitutional if the ordinances contain a provision for obtaining a warrant upon an objection to the inspection. *See, e.g.*, *Mann v. Calumet City, Ill.*, 588 F.3d 949, 951 (7th Cir. 2009); *Tobin v. City of Peoria*, 939 F. Supp. 628, 634 (C.D. Ill. 1996); *Hometown Coop. Apartments v. City of Hometown*, 515 F. Supp. 502, 504 (N.D. Ill. 1981).

13

¶32. In *Hometown*, 515 F. Supp. at 503, the City of Hometown, Illinois, had a point-of-sale ordinance that had recently been amended following an earlier district court judgment. The prior ordinance had been found unconstitutional "insofar as it failed to provide for a warrant as a prerequisite for the point[-]of[-]sale inspection." *Id.* (citing *Hometown*, 495 F. Supp. at 60). Subsequently, the City of Hometown amended the ordinance to provide that, absent consent, no entry shall be made without the procurement of a warrant. *Id.* After its review of *Camara*, 387 U.S. 523, *Currier v. City of Pasadena*, 48 Cal. App. 3d 810 (Cal. Ct. App. 1975), and *Wilson*, 346 N.E.2d 666, the district court stated:

> By providing for a warrant procedure in cases in which a new owner or lessee of property refuses to consent to an inspection by the building department, the City of Hometown has remedied the fatal flaw in its earlier point[-]of[-]sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection. If the property owner or tenant refuses to consent to the inspection, the city must procure a warrant in order to gain access to the property. To this extent, the Hometown ordinance is now in accord with the [F]ourth [A]mendment proscription [against] unreasonable searches and seizures.

*Hometown*, 515 F. Supp. at 504.

¶33. In *Tobin*, a rental ordinance was challenged by several rental property owners in the City of Peoria, Illinois. The City of Peoria enacted an ordinance requiring owners of rental properties to register their properties and have them inspected for compliance with the City's housing, environmental, and building codes. *Tobin*, 939 F. Supp. at 630. Subsequently, the owners challenged the ordinance on the premise that it was unconstitutional on its face and as applied because it forced them to consent to warrantless administrative searches of their rental properties in violation of the Fourth Amendment. *Id.* at 631. The court, however,

14

found "that the plain language of the [i]nspection [o]rdinance can be read as incorporating a warrant requirement into the inspection procedure, thereby successfully defeating a claim that it is unconstitutional on its face." *Id.* at 633.

¶34. In *Mann*, Calumet City, Illinois, enacted an ordinance that forbade the sale of a house without an inspection. Subsequently, residents of Calumet City who were prevented from or delayed in selling their houses by the ordinance brought suit. *Mann*, 588 F.3d at 951. The court stated: "'[P]oint[-]of[-]sale' ordinances . . . are common and have withstood constitutional attack in all cases that we know of in which the ordinance avoided invalidation under the Fourth Amendment by requiring that the city's inspectors obtain a warrant to inspect a house over the owner's objection." *Id.* at 951. Further, the court acknowledged the state's need to regulate property and enact building codes and zoning regulations in order to prevent the deterioration of property values. *Id.* at 952. Subsequently, the Court upheld the ordinance as constitutional and concluded that "[w]e cannot think of what more could reasonably be required to protect the homeowner's rights, including his Fourth Amendment rights, which the ordinance's warrant provisions fully protect." *Id.* at 953. We agree.

¶35. Under section 7, "INSPECTION AND CERTIFICATION," RIPLA provides for the advance-consent provision and details the instances in which access for an inspection might be warranted. However, building officials have a duty, by virtue of the rental license, to secure a judicial warrant authorizing entry in the event that either the tenant or owner refuses entry. Further, in section 8, "NOTICE AND ORDERS," owners are afforded advance notice as to the date and time of any inspection. Since RIPLA incorporates a warrant-requirement provision into its inspection procedure, we find that Crook's claim that it is unconstitutional

15

is without merit.

## II. RIPLA Void for Violation of Mississippi Law

¶36. Crook next argues that RIPLA violates Mississippi Code Annotated section 21-17-5(2)(h) (Supp. 2013). The section states, in pertinent part:

> Unless such actions are specifically authorized by another statute or law of the State of Mississippi, this section shall not authorize the governing authorities of municipalities to . . . without prior legislative approval, regulate, directly or indirectly, the amount of rent charged for leasing private residential property in which the municipality does not have a property interest.

Crook contends that the provision in RIPLA requiring that owners post a $10,000 bond, collateral, or letter of credit as surety indirectly regulates the amount of rent charged for leasing residential property. Crook argues that by mandating this surety amount, the ordinance imposes an added cost to every rental house, and accordingly, increases the amount charged for rent. The City, however, contends that the bond requirement does not amount to regulation and that there is statutory authority supporting the adoption of RIPLA. We agree.

¶37. At trial, Dr. Charles Dennis, a retired finance professor with the University of Southern Mississippi, gave expert testimony in support of Crook's argument that the bond provision set forth in RIPLA indirectly regulates the amount of rent. Prior to reaching his opinion, Dr. Dennis reviewed Mississippi Code Annotated section 21-17-5(2)(h) (Supp. 2013) and RIPLA. Dr. Dennis stated that "the ordinance will do one of two things, either lower the profit of the landlord or increase the rent paid by the renter." However, Dr. Dennis stated that if the surety requirement were to affect the rental rate, no one could tell how much. Further, Dr. Dennis acknowledged that rental prices are determined by the market and

16

that there are innumerable factors that affect the market.

¶38.   We find that this testimony only puts forth proof that the surety requirement could be one of many factors that would affect the rental market, but not that it, directly or indirectly, regulates the amount of rent.  RIPLA does not set a minimum or maximum rental rate, does not establish a formula to aid in establishing rental rates, and does not require the landlord to submit rental rates.

¶39.   Further, the adoption of surety requirements is supported by Mississippi statutory law. In particular, Mississippi has adopted various statutes that require a surety or similar collateral to ensure compliance with regulatory obligations.  *See, e.g.*, Miss. Code Ann. § 21-19-35 (Rev. 2007); Miss. Code Ann. § 73-29-13 (Rev. 2012); Miss. Code Ann. § 73-4-29 (Rev. 2012); Miss. Code Ann. § 73-60-13 (Rev. 2012); Miss. Code Ann. § 27-65-21 (Rev. 2013); Miss. Code Ann. § 27-57-7 (Rev. 2013).  As such, we find that RIPLA is not in violation of the statute prohibiting municipalities from regulating rental rates.  This issue is also without merit.

### III.    Crook's Arrest

¶40.   Crook argues that his arrest warrants were based on insufficient affidavits that lacked fact-specific knowledge.  However, Crook's argument is moot since the real issue is whether or not Crook's arrest was proper.  On October 6, 2010, Crook was arrested for renting the Cypress Drive property without a rental license in violation of RIPLA.  He was handcuffed, placed in a police patrol car, and transported to the City's jail, where he was photographed, booked, and held until he could post a bond.

¶41.   RIPLA, section 15, provides the following procedure regarding violations of the

17

ordinance:

> 15. VIOLATIONS
>
>> a. Any [p]erson who violates any provision of RIPLA shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine in a sum not to exceed three hundred dollars ($300) per day for each offense. A separate offense shall be deemed committed upon each day during or on which a violation occurs or continues.

At the time of his arrest, the City had good cause to believe that Crook was in violation of RIPLA. However, Crook had not yet answered to the courts and had not yet been convicted for the alleged violations. The effect of a violation of RIPLA could be analogous to that a misdemeanor speed-limit violation. It is only upon conviction of a misdemeanor speed-limit violation that jail time becomes a possibility. Miss. Code Ann. § 63-9-11 (2) (Rev. 2013). Hence, the person would have been summoned to appear in court, at which point the court would have the authority over that person to adjudicate the case on the merits or issue an arrest warrant for failure to appear.

¶42. Likewise, here the City should have approached the court to set a hearing on the matter and noticed Crook to appear on that date. If Crook failed to appear, the court could then issue a citation for contempt. Since these actions were not taken, we find that Crook's arrest on October 6, 2010, was improper.

### IV. Sufficiency of the Evidence and Weight of the Evidence

¶43. Finally, Crook argues that, based on the testimony presented at trial, the evidence was insufficient to sustain a conviction and that the verdict was against the overwhelming weight of the evidence. In order for the evidence to be found sufficient to sustain a conviction, the

18

evidence must show "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed[.]" *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005) (citing *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)). This Court will reverse a conviction only if the evidence "point[s] in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty." *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶44. At trial, Crook testified that he had a verbal option-to-purchase agreement with Swyers and a written option-to-purchase contract with Thompson. However, the testimonies of Gelston and Foshee reflect that the alleged agreements with Swyers and Thompson were, in fact, attempts to disguise rental relationships. Further, both Swyers and Thompson testified that the nature of their occupancy at the Cypress Drive property was rental and that this was understood by Crook. We cannot say that the evidence was insufficient.

¶45. Regarding weight of the evidence, a judgment will not be disturbed unless "it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18) (citing *Herring v. State*, 691 So. 2d 948, 957 (Miss. 1997)). As previously stated, the testimony at trial reflected that the agreements Crook had with both Swyers and Thompson were rental in nature. It is well settled that "[t]he trial judge has the sole authority to determine the credibility of the witnesses when sitting as trier of fact in a bench trial." *Walker v. State*, 913 So. 2d 411, 413 (¶9) (Miss. Ct. App. 2005) (citing *Rice Researchers Inc. v. Hiter*, 512 So. 2d 1259, 1265 (Miss. 1987)). We cannot find that the verdict was against the weight of the evidence. These

19

issues are without merit.  Therefore, the circuit court's judgment is affirmed.

¶46.   **THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ROBERTS AND FAIR, JJ., CONCUR. MAXWELL AND JAMES, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  CARLTON, J., NOT PARTICIPATING.**