ON WRIT OF CERTIORARI

CHANDLER, Justice,
for the Court:
¶ 1. The City of Madison enacted an ordinance requiring landlords to obtain a license for each unit of rental property. The ordinance, known as the Rental Inspection and Property Licensing Act (RI-PLA) conditions the grant of a license on the landlord’s'advance consent to property inspections. Kenneth Michael Crook was convicted in municipal court of two counts of violating RIPLA by maintaining a rental unit without a rental license and sentenced to pay a fine of $300 on each count. After a bench trial, the County Court of Madison *932 County affirmed his convictions. Crook appealed to the Circuit Court of Madison County, which affirmed. Crook then appealed to this Court. We assigned his appeal to the Court of Appeals, which affirmed.
¶ 2. At each level of review, Crook argued that RIPLA’s inspection provisions violate the ban on unreasonable searches imposed by the Fourth Amendment of the United States Constitution. The Court of Appeals held that RIPLA is not unconstitutional because it requires the City to obtain a judicial warrant if the landlord or tenant withholds consent to an inspection. We granted Crook’s petition for certiorari and now reverse. We hold that RIPLA’s inspection provisions are constitutionally defective because, although RIPLA has a warrant provision, that provision allows a warrant to be obtained “by the terms of the Rental License, lease, or rental agreement,” which is a standard less than probable cause. Accordingly, we reverse the judgments of the Court of Appeals, the Circuit Court of Madison County, and the County Court of Madison County affirming Crook’s convictions. We reverse Crook’s convictions and render a judgment of acquittal.
FACTS

A. RIPLA

¶ 3. The City adopted RIPLA on July 15, 2008, and amended it on May 18, 2010. RIPLA states that its purpose is to “preserve and promote the public health, safety, and general welfare of the City’s residents and of the public generally, and to assure the proper maintenance of the City’s residential rental housing stock.” RIPLA’s preamble further illuminates its purpose:
WHEREAS, the City of Madison, Mississippi (“City”) finds that certain of its residential neighborhoods could experience declining property values, a concomitant loss of City property tax revenue, and a decline in health, safety, and quality of life due to a lack of inspection and preventive and ongoing maintenance for an increasing number of rental properties owned by absentee landlords;
[[Image here]]
WHEREAS, the City has a duty and need to enact regulations that establish safe standards related to preventive and ongoing rental property maintenance, and enable the City to effectively license, inventory, inspect, and, if necessary,'repair rental properties, in order to protect the overall health, safety, and welfare of the City’s residents....
NOW, THEREFORE, BE IT ORDAINED BY THE MAYOR AND BOARD OF ALDERMEN OF THE CITY OF MADISON, MISSISSIPPI, THAT THIS ORDINANCE SHALL GOVERN THE LICENSING, INSPECTION, MAINTENANCE, AND REPAIR OF RENTAL PROPERTIES WITHIN THE CORPORATE LIMITS OF THE CITY.
¶ 4. RIPLA makes it a misdemeanor to rent property without both a rental license and a certificate of compliance for each dwelling unit, and each offense is punishable by a fine of $300 per day of noncompliance. A “dwelling unit” is defined as “[a] room or group of rooms occupied or intended to be occupied as a separate living quarters for one (1) Household.” The building official is the City official designated to administer and enforce RIPLA.
¶ 5. To obtain a rental license, the owner must give advance consent to allow the building official to inspect the property to ensure compliance with RIPLA. The owner also must submit a written application, pay annual licensing fees of $100 per dwelling unit and $100 per dwelling as a *933 whole, and post a $10,000 bond, collateral, or letter of credit per dwelling unit. The bond serves as a surety for the costs of performing any correction orders issued by the building official.
¶ 6. An owner obtains a certificate of compliance after the building official inspects the property and certifies that it complies with RIPLA’s requirements, including city housing codes, technical codes, zoning, subdivision, landscape, and environmental ordinances, state and federal housing laws, and applicable judicial and administrative decrees. The owner’s advance consent to inspection allows the building official to make inspections “when and as needed” of all portions of a dwelling unit and common areas, whether occupied or unoccupied. If a violation is noted, the building official issues a notice of the violation with a time set for correcting the violation. If correction is not made by the deadline, the City may authorize the building official “to complete the necessary repairs, alterations, or improvements and charge the expenses incurred therfor [sic] to the Owner.” If this occurs, the owner must reimburse the City, or forfeit the bond, collateral, or letter of credit. If the repairs exceed the owner’s surety, the City will have a privileged lien on the property to secure its expenses.
¶ 7. The building official must give the owner reasonable advance notice of the date and time of each inspection, with the owner to notify the tenants of any occupied dwelling units slated for inspection. RI-PLA states that the building official is authorized “to enter, inspect, repair, alter, and improve” all property subject to RI-PLA. It further states that, by the terms of the rental license, owners and tenants consent to the building official entering the property at reasonable times for inspection and repair to ensure compliance with RI-PLA. It also states:
Should a Tenant or Owner refuse entry, the Building Official shall be authorized by virtue of the terms of the Rental License to secure a judicial warrant authorizing entry by the terms of the Rental License, lease, or rental agreement.

B. Crook’s Prosecution

¶ 8. At the trial, it was established that Crook owned residential property located at 127 Cypress Drive, within the City of Madison, Mississippi. It was undisputed that Duke Swyers lived at the residence from 2007 through 2009, and Tammy Thompson lived there from March 2010 until September 2010. Crook testified that he had option-to-purchase agreements with Swyers and Thompson under which rental payments would go toward the purchase price. He argued that these agreements removed his property from the dictates of RIPLA. However, both Swyers and Thompson testified that they had been renting and never had planned to purchase the property.
¶ 9. On August .14, 2008, the City sent notifications letters concerning RIPLA to all owners of rental property in the City. The letter informed the owners of the steps needed to comply with RIPLA. The City sent Crook a copy of the letter based upon City officials’ belief that 127 Cypress Drive was rental property. On October 20, 2008, the City sent Crook a letter stating that it had not received his licensing fee and informing him of the consequences of renting property without a rental license. On February 12, 2009, Crook filled out and signed an application for a rental license and paid a $100 licensing fee. The application contained the following statement above Crook’s signature: “[a]pplication is hereby made for an inspection to determine if the existing building described is in compliance with codes *934 and ordinances adopted by the City of Madison.” But because Crook never posted a bond, collateral, or letter of credit, the City never issued a rental license for 127 Cypress Drive. On March 11, 2009, Angie Gelston, a code-enforcement officer, filed charges against Crook for violating RI-PLA. Gelston alleged Crook, despite notice, had continued to rent 127 Cypress Drive without a license. On March 26, 2010, Crook sent the City a letter requesting return of the licensing fee and stating that he personally would be occupying 127 Cypress Drive, thus removing the property from the scope of RIPLA.
¶ 10. On May 20, 2010, the building official, Bill Foshee, sent Crook a letter alleging Crook was in violation of RIPLA for renting the property without a rental license, and that all utilities would be disconnected if Crook did not comply within fifteen days. On June 1, 2010, Crook responded, stating that RIPLA did not apply to the property because Thompson had an option to purchase it and it was not rental property. Foshee reported the violation to the Madison Police Department. On October 6, 2010, Crook was arrested for having rented 127 Cypress Drive without a rental license in violation of RIPLA.
¶ 11. On January 13, 2011, the Madison Municipal Court convicted Crook of two counts of violating RIPLA. He appealed to the County Court of Madison County and filed motions to dismiss, alleging that (1) RIPLA is facially unconstitutional and unconstitutional as applied; (2) the arrest warrants were invalid due to lack of probable cause; and (3) RIPLA violates a state statute that bars municipalities from directly or indirectly regulating the amount of rent charged for private residential property. See Miss.Code Ann. 21-17-5(2)(h) (Rev.2007). The county court denied the motions to dismiss, held a trial, and affirmed his convictions. Crook appealed to the circuit court, which affirmed.
¶ 12. Before the Court of Appeals, Crook raised his arguments from the motions to dismiss and also challenged the weight and sufficiency of the evidence by arguing that RIPLA did not apply to his property due to the option contracts. The Court of Appeals affirmed. Crook v. City of Madison, 168 So.3d 1169, 1181, 2014 WL 4823656, *11 (Miss.Ct.App.2014). The Court of Appeals found that the verdict was not against the overwhelming weight of the evidence. Id. at 1179-80, at *10. The Court of Appeals found that the City had presented sufficient evidence that Crook had rented the property to Swyers and Thompson and that the purported option contracts had been attempts to disguise these rental relationships. Id. at 1179-80, at *10. But the Court of Appeals found that Crook’s arrest for RIPLA violations was improper. Id. at 1179-80, at *10. The Court of Appeals held that RI-PLA does not violate Mississippi Code Section 21 — 17—5(2)(h). Id. at 1179, at *9. The Court of Appeals also held that RI-, PLA does not violate the Fourth Amendment’s prohibition on unreasonable searches because RIPLA mandates that the building official obtain a warrant if the owner or tenant does not consent to an inspection. Id. at 1178, at *8.
¶ 13. This Court granted Crook’s petition for certiorari. We limit our review to the Court of Appeals’ holding that the warrant provision renders RIPLA constitutional. M.R.A.P. 17(h). Because we find that RIPLA’s warrant provision is insufficient to safeguard landlords’ and tenants’ right of freedom from unreasonable searches, we find RIPLA’s inspection provisions to be unconstitutional.
DISCUSSION

A. Standard of Review

¶ 14. Crook argues that RIPLA’s inspection provisions are facially unconsti *935 tutional[1] because they require a landlord to give advance consent to warrantless inspections. This Court applies de novo review to the issue of the constitutionality of a statute or ordinance. Johnson v. Sysco Food Servs., 86 So.3d 242, 243 (Miss.2012). We “bear[] in mind (1) the strong presumption of constitutionality; (2) the challenging party’s burden to prove the statute is unconstitutional beyond a reasonable doubt; and (3) all doubts are resolved in favor of a statute’s validity.” Id.

B. Standing

¶ 15. The Court of Appeals held that Crook had standing to challenge the constitutionality of RIPLA’s inspection provisions. This Court has observed that “Mississippi’s standing requirements are quite liberal.... [Pjarties have standing to sue ‘when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.’ ” Brent v. Mathis, 154 So.3d 842, 845 (Miss.2014) (quoting Hall v. City of Ridgeland, 37 So.3d 25, 33 (Miss.2010)). For standing based on adverse effect, the adverse effect suffered by the challenger must be different than the adverse effect suffered by the general public. Brent, 154 So.3d at 845 (quoting Hall, 37 So.3d at 33). Here, Crook was prosecuted for renting his property without a rental license; in order to obtain that rental license, he would have had to have given advance consent to an inspection. As the Court of Appeals correctly recognized, Crook singularly experienced an adverse effect from the City’s conduct due to his prosecution for renting his property without a rental license, affording him a color-able interest in the subject matter of this litigation. We find that Crook has standing to challenge the constitutionality of RIPLA’s inspection provisions.

C. RIPLA and the Fourth Amendment

If 16. Under the Fourth Amendment of the United States Constitution,
[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
U.S. Const. amend. IV. The Fourth Amendment is applicable to the states through the Fourteenth Amendment. Maryland v. Pringle, 540 U.S. 366, 369, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003). The Fourth Amendment’s purpose “is to safeguard the privacy and security of individuals. against arbitrary invasions by governmental officials.” Camara v. Mun. Court of San Francisco, 387 U.S. 523, 528, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
¶ 17. In Camara, the United States Supreme Court examined whether administrative inspection provisions violate the Fourth Amendment’s prohibition on unreasonable searches. Id. at 525, 87 S.Ct. 1727. The case arose when a tenant was prosecuted for violating the San Francisco Housing Code after he refused to allow a housing inspector to enter his apartment without a warrant. Id. at 526, 87 S.Ct. 1727. The housing code gave inspectors the right to enter buildings at reasonable times. Id. The Supreme Court held “that administrative searches of the kind at is *936 sue here are significant intrusions upon the interests protected by the Fourth Amendment, that such searches when authorized and conducted without a warrant procedure lack the traditional safeguards which the Fourth Amendment guarantees to the individual_” Id. at 534, 87 S.Ct. 1727.
¶ 18. Camara emphasized that a warrant for an inspection may be obtained only upon probable cause. “In cases in which the Fourth Amendment requires that a warrant to search be obtained, ‘probable cause’ is the standard by which a particular decision to search is tested against the constitutional mandate of reasonableness.” Id. at 534, 87 S.Ct. 1727. But the test of probable cause required for a search in this context is different from what is required to establish probable cause to search in a criminal investigation. Id. at 538, 87 S.Ct. 1727. Specifically:
Where considerations of health and safety are involved, the facts that would justify an inference of “probable cause” to make an inspection are clearly different from those that would justify such an inference where a criminal investigation has been undertaken. Experience may show the need for periodic inspections of certain facilities without a further showing of cause to believe that substandard conditions dangerous to the public are being maintained. The passage of a certain period without inspection might of itself be sufficient in a given situation to justify the issuance of warrant. The test of “probable cause” required by the Fourth Amendment can take into account the nature of the search that is being sought.
Id. The Supreme Court further stated that:
it is obvious that “probable cause” to issue a warrant to inspect must exist if reasonable legislative or administrative standards for conducting an area inspection are satisfied with respect to a particular dwelling. Such standards, which will vary with the municipal program being enforced, may be based upon the passage of time, the nature of the building (e.g., a multifamily apartment house), or the condition of the entire area, but they will not necessarily depend upon specific knowledge of the condition of the particular dwelling.
In the companion case of See v. City of Seattle, 387 U.S. 541, 545, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967), the Supreme Court found that consent or a warrant also is required for administrative entry upon commercial premises not open to the public.
¶ 19. In subsequent cases, courts have addressed ordinances that forced owners to consent in advance to property inspections. Numerous cases have held these ordinances to be unconstitutional because they did not contain a warrant provision. See, e.g., Brower v. Village of Bolingbrook, 735 F.Supp. 768, 777 (N.D.Ill.1990); Hometown Co-op. Apartments v. City of Hometown (Hometown I), 495 F.Supp. 55, 60 (N.D.Ill.1980); State v. Finnell, 115 Ohio App.3d 583, 685 N.E.2d 1267, 1271 (1996); Sokolov v. Village of Freeport, 52 N.Y.2d 341, 438 N.Y.S.2d 257, 420 N.E.2d 55, 58 (1981); Pashcow v. Town of Babylon, 96 Misc.2d 1036, 410 N.Y.S.2d 192, 193 (N.Y.Sup.Ct.1976); Wilson v. Cincinnati, 46 Ohio St.2d 138, 346 N.E.2d 666, 671 (1976). For example, in Wilson v. City of Cincinnati, an ordinance required a property owner to consent to a warrantless inspection before entering into a purchase and sale agreement. If the seller attempted to sell the property without a certificate of inspection, the seller was subject to criminal penalties. Wilson, 346 N.E.2d at 670. The Ohio Supreme Court held that the consent was involuntary and unconsti *937 tutional because it was coerced by the threat of criminal penalties. Id. The court also held that “[a]s applicable to the instant facts, the import of Camara is that the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty.” Id. at 671. The court found that the ordinance violated the Fourth Amendment because it forced a property owner to choose between obtaining the required certificate by allowing a warrantless inspection, or incurring criminal penalties upon the failure to tender the certificate. Id.
¶ 20. In Sokolov, the Court of Appeals of New York faced an ordinance, similar to RIPLA, that required a landlord to consent to a warrantless inspection in order to obtain a permit to rent the property. Sokolov, 438 N.Y.S.2d 257, 420 N.E.2d at 56. Renting the property without a permit subjected the landlord to a fine of $250 per day. Id. The court found that, under these facts, “in substance, a landlord is subject to a fine of $250 per day for failure to consent to a warrantless administrative inspection.” Id. The Village argued that the ordinance did not punish the failure to consent to an inspection, but it only punished renting a property without a permit. Id., 438 N.Y.S.2d 257, 420 N.E.2d at 57. The Court of Appeals of New York rejected this argument, stating that:
through an indirect method the property owner is being penalized for his failure to consent to a warrantless search. In this instance the property owner’s consent is not voluntarily given as it is clearly a product of coercion. A property owner cannot be regarded as having voluntarily given his consent to a search where the price he must pay to enjoy his rights under the Constitution is the effective deprivation of any economic benefit from his rental property.
Id. (citation omitted). The court found that, because the ordinance coerced consent to a warrantless search under threat of criminal penalty, it was unconstitutional under Camara and its progeny. Id., 438 N.Y.S.2d 257, 420 N.E.2d at 58.
¶ 21. In other cases, ordinances requiring advance consent to search have been upheld because the ordinances required the government to obtain a warrant if the owner refused consent, and the ordinances did not exact criminal penalties for lack of consent. Mann v. Calumet City, Ill., 588 F.3d 949, 951 (7th Cir.2009); Tobin v. City of Peoria, 939 F.Supp. 628, 634 (C.D.Ill.1996); Hometown Co-op. Apartments v. City of Hometown (Hometown II), 515 F.Supp. 502, 504 (N.D.Ill.1981); cf. Dearmore v. City of Garland, 400 F.Supp.2d 894 (N.D.Tex.2005) (although the rental-permit ordinance required the City to obtain a warrant if the owner did not consent to an inspection, it also imposed criminal penalties on the owner for failing to consent and was unconstitutional). In Mann v. Calumet City, 588 F.3d 949, 950 (2009), the Seventh Circuit reviewed an ordinance that forbade the sale of a house without an inspection to determine compliance with the building code. The ordinance had a requirement that the city’s inspectors obtain a warrant to conduct the inspection if the owner refused consent. Id. at 952. The Seventh Circuit held that the ordinance was constitutional, stating that “ ‘[pjoint of sale’ ordinances such as this one are common and have withstood constitutional attack in all cases that we know of in which the ordinance avoided invalidation under the Fourth Amendment by requiring that the city’s inspectors obtain a warrant to inspect a house over the owner’s objection.” Id. at 951.
¶ 22. In Hometown I, the district court found an ordinance unconstitutional under Camara because it required the owner to *938 consent to an inspection before the property could be leased or sold; a fíne ensued if the owner leased or sold the property without a certificate of inspection. Hometown I, 495 F.Supp. at 56, 60. In Hometown II, the district court revisited the ordinance after it had been amended to provide a warrant procedure for cases when the owner refused consent to an inspection. Hometown II, 515 F.Supp. at 503. The court held that the City of Hometown’s amendment “remedied the fatal flaw in its earlier point of sale inspection ordinance. The property owner is no longer forced to choose between consenting to a warrantless search or subjecting himself or herself to substantial fines for failure to procure a certificate of inspection.” Id. at 504. Thus, the court found the ordinance constitutional. Id.
¶23. In Tobin, an ordinance required property owners to obtain a certificate of inspection for compliance with housing, environmental, and building codes before renting a property. Tobin, 939 F.Supp. at 630. Renting without the certificate subjected the owner to a criminal penalty. Id. Several property owners sued, arguing that the ordinance forced them to consent to warrantless searches to obtain the required certificate of compliance. Id. at 631. Like RIPLA, the City of Peoria’s ordinance stated that the City would give owners advance notice of inspections. Id. at 632. The ordinance also stated that, in the event the owner refused to allow an inspection, the City reserved the right to obtain a warrant. Id. The owners argued that the warrant provision was insufficient to satisfy the Fourth Amendment because it did not require the City to get a warrant. Id. But the court held that “the plain language of the Inspection Ordinance can be read as incorporating a warrant requirement into the inspection procedure, thereby successfully defeating a claim that it is unconstitutional on its face.” Id. at 633.
¶ 24. Crook argues that this case is analogous to Wilson, Sokolov, and the other cases in which the ordinance at issue lacked a warrant provision. While Crook recognizes that RIPLA contains a warrant provision, he argues that it does not apply to RIPLA’s advance-consent provision because a landlord must give advance consent to inspections in order to get a rental license. The Court of Appeals agreed with the City that, like the ordinance in Tobin, when RIPLA is read in its entirety, RI-PLA’s warrant provision is sufficient to satisfy the Fourth Amendment. Under this reasoning, the advance consent a landlord gives to get a rental license is illusory because, under the warrant provision, a licensed landlord can always refuse a scheduled inspection and force the City to obtain a warrant. According to the reasoning of the Court of Appeals, RIPLA never makes a landlord consent to a war-rantless search.
¶ 25. The Court of Appeals’ reasoning is flawed because it fails to account for the language of RIPLA’s warrant provision, which on its face does not comport with the Fourth Amendment’s probable-cause requirement. The warrant provision states:' “[sjhould a Tenant or Owner refuse entry, the building official shall be authorized by virtue of the terms of the Rental License to secure a judicial warrant authorizing entry by the terms of the Rental License, lease, or rental agreement.” The emphasized language allows a judicial officer to issue a warrant “by the terms of the Rental License, lease, or rental agreement,” rather then upon probable cause. The portion of RIPLA’s warrant provision authorizing a judicial officer to issue a warrant “by the terms of the Rental License” is particularly troublesome. Because each rental license con *939 tains the owner’s advance consent to inspections, a significant danger exists that a building official could attempt to obtain a warrant by asserting the owner’s advance consent. Probable cause, however, must be the standard. Camara, 387 U.S. at 534, 87 S.Ct. 1727. Because RIPLA’s warrant provision authorizes the issuance of a warrant without probable cause, it is unconstitutional. And because RIPLA lacks a valid warrant provision, its inspection provisions are unconstitutional.
¶26. The separate opinion would find that RIPLA’s inspection provisions are not appropriate for a facial challenge because they do not prohibit the City from obtaining a warrant based upon probable cause. We reject that reasoning. Ca-mara held that administrative searches conducted without a warrant procedure violate the Fourth Amendment. Camara, 387 U.S. at 534, 87 S.Ct. 1727. And a warrant to inspect property must be based upon probable cause. Id. Thus, for an inspection provision to be constitutional, it must contain a warrant requirement that provides for the issuance of warrants upon probable cause. See Dearmore, 400 F.Supp.2d at 902 (stating that “Camara ... holds that an administrative search of a private residence, including a private residence owned by one person and rented by another, must include a warrant procedure”). RIPLA contains a warrant procedure, but that procedure is constitutionally deficient because it expressly allows a warrant to issue without probable cause. Because RIPLA expressly allows inspection warrants to issue without probable cause, it effectively contains no warrant requirement. And an inspection provision with no warrant requirement is facially unconstitutional. State v. Finnell, 115 Ohio App.3d 583, 685 N.E.2d 1267, 1272 (1996).
¶ 27. The separate opinion also would find that the advance-consent provision is facially unconstitutional because it requires a landlord to give advance consent to inspections. Rather than focusing on the absence of a constitutionally valid warrant requirement, the separate opinion simply would find the advance-consent provision unconstitutional because it requires a landlord to give advance consent to searches in order to obtain a rental license. Because we hold that RIPLA’s inspection provisions, which include the advance-consent requirement, are facially unconstitutional because they allow a warrant to issue without probable cause, we agree with the separate opinion that the advance-consent requirement is facially invalid.

D. Severability

¶ 28. RIPLA contains a severability clause, which provides that “[ejvery section, subsection, or provision of RIPLA is declared separable from every other section, subsection, or provision to the extent that if any section, subsection, or provision of RIPLA shall be held invalid, such holding shall not invalidate any other section, subsection, or provision thereof.” This express language reflects the clear intent of the City that RIPLA is severable. Having found RIPLA’s inspection provisions to be unconstitutional, we find them to be sever-able and that the remainder of the ordinance remains in full force and effect. See Jones v. City of Ridgeland, 48 So.3d 530, 539 (Miss.2010).

E. Crook’s Conviction

¶29. Crook was convicted of renting property without a rental license in violation of RIPLA. To obtain a rental license, RIPLA required Crook to give advance consent to a warrantless search. This he did not do, and he was convicted of renting his property without a license. Because Crook was convicted of renting property *940 without a license, a license that was unconstitutionally conditioned upon advance consent to a warrantless search, Crook’s conviction must be reversed.[2]
CONCLUSION
¶ 30. We find RIPLA’s inspection provisions to be unconstitutional due to the lack of a valid warrant provision. Therefore, we reverse the judgments of the Court of Appeals, the Circuit Court of Madison County, and the County Court of Madison County that affirmed Crook’s convictions. We reverse Crook’s convictions for renting property without a rental license, and render a judgment of acquittal.
¶ 31. REVERSED AND RENDERED.
WALLER, C.J., LAMAR, KITCHENS AND KING, JJ., CONCUR. COLEMAN, J, CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., AND PIERCE, J.; WALLER, C.J., JOINS IN PART. DICKINSON, P.J., NOT PARTICIPATING.

. Before the Court of Appeals, Crook also argued that RIPLA is unconstitutional as applied to him. Because we find that RIPLA's inspection provisions are facially unconstitutional, we do not address Crook’s as-applied challenge, except to note that the challenge is not ripe for review because the City never sought to inspect Crook’s property.

. The separate opinion would not reverse Crook's conviction, reasoning that, because Crook never obtained a rental license, he never gave advance consent to an inspection. We reject this reasoning. If Crook had obtained a rental license, he could not have been convicted of renting property without a rental license. RIPLA unconstitutionally forces landlords like Crook to either consent to a warrantless search or forego a rental license. Crook cannot be penalized for failing to obtain a license that required his consent to an unconstitutional, warrantless search. Wilson v. Cincinnati, 46 Ohio St.2d 138, 346 N.E.2d 666, 671 (1976) (stating that “the Fourth Amendment prohibits placing appellant in a position where she must agree to a warrantless inspection of her property or face a criminal penalty.)”